John Arthur RODDA, Appellant,

v.

The STATE of Texas, State.

Nos. 2–95–042–CR, 2–95–043–CR.

Court of Appeals of Texas,
Fort Worth.

June 27, 1996.

Discretionary Review Refused Oct. 2, 1996.

Louis E. Sturns, Arlington, for Appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of the Appellate Section, Danielle A. Legault, Lisa Amos, Martin Purselley, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

Before DAUPHINOT, RICHARDS and HOLMAN, JJ.

OPINION

DAUPHINOT, Justice.

Appellant, John Arthur Rodda, was convicted of one count of aggravated sexual assault of a child and two counts of indecency with a child in cause number 0518737D and of indecency with a child in cause number

0518730D. The jury sentenced him to a life sentence in each case on all counts.

At trial, Rodda insisted on representing himself, but standby counsel was provided and participated in Rodda's defense. Rodda raises four points of error on appeal, contending: 1) that the trial court erred by failing to permit him to offer evidence of his bed sores; 2) that the trial court abused its discretion by denying his unsworn, oral motion for continuance; 3) that the evidence was insufficient to prove penetration; and 4) that the trial court improperly denied his motion to suppress evidence in violation of his due process rights. Because we find that his points of error are without merit, Rodda's points of error are overruled and the jury's verdicts are affirmed.

One day Rodda was sitting in his wheelchair near a tree in the park, combing his hair and playing with his penis, which protruded through a hole in his pants. Curious, A.B. watched Rodda from the window of her apartment. Later the same day, A.B. and her younger cousin Kr.M. went to the playground and again saw Rodda. Rodda asked A.B. if he could read the book she had. Then, according to A.B., he offered to show the girls something. She testified that he showed her a measuring instrument and that he was measuring his penis outside his clothing. Rodda then asked if he could measure their (A.B.'s and Kr.M.'s) genitalia. A.B. opened her shirt and Rodda fondled her breasts. Then he told her to unbutton her shorts, and he put his finger inside the labia of her vulva. His finger, however, did not penetrate the vaginal vault. A.B. was also instructed by Rodda to rub his penis or he would touch her again.

### Evidence of Bed Sores

■ Rodda argues that evidence of his bed sores was relevant because it pertained to the length of incarceration that was appropriate and also to his future dangerousness to society. Defense counsel attempted to offer photographs of Rodda's bed sores at punishment. The State argues that the evidence was not relevant. Whether the evidence was relevant is academic because Rodda took the stand and described to the jury, in detail, his physical condition. He described the extent of his paralysis, the physical limitations he suffered from paralysis, the fact that his paralysis was caused by a gunshot wound, and the terrible previous experiences he had with the criminal justice system at his other trials. He also described his bed sores at length.

The State points out that the test for harm when the evidence is excluded is whether there is a reasonable probability that the absence of the evidence contributed to the conviction or punishment.[1] The State further points out that if the import of the excluded evidence is conveyed to the trier of fact through other evidence, no error is shown.[2]

Even if, arguendo, it was error for the trial court to prevent Rodda from placing the photographs of the bed sores before the jury, the error, if any, is harmless because the very same evidence, as well as further evidence of Rodda's physical condition, was conveyed at length to the trier of fact. Rodda's first point of error is overruled.

### Motion for Continuance

■ Rodda argues that he was not prepared to proceed with his witnesses when the State rested. He contends that the trial court abused its discretion by denying his oral, unsworn motion for continuance. A motion for continuance must be in writing and must be sworn to.[3] An oral, unsworn motion for continuance does not preserve error.[4] Because appellant presents nothing

1. *Mowbray v. State*, 788 S.W.2d 658, 668 (Tex. App.—Corpus Christi 1990, pet. ref'd), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991).

2. *Easterling v. State*, 710 S.W.2d 569, 574 (Tex. Crim.App.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986); *Mowbray*, 788 S.W.2d at 668; *Roberts v. State*, 743 S.W.2d 708, 711 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd).

3. Tex. Code Crim. Proc. Ann. arts. 29.03, 29.08 (Vernon 1989).

4. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim.App.1995).

for review, his second point of error is overruled.

### Evidence of Penetration

■ In his third point of error, Rodda contends the evidence was insufficient to show penetration. In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict.[5] The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[7]

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence.[8] The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.[9]

■ A.B. testified:

[THE STATE:] Now, tell me what happened.

[A.B.:] Then, so, he said pull down—unbutton my shorts —

THE COURT: Put her where the mike will pick up, please.

[THE STATE:] Sit back down and I will come over where you are. Okay. Did he touch you down there?

[A.B.:] Yes.

[THE STATE:] And how did his fingers touch you?

[A.B.:] He was pushing on it.

[THE STATE:] Okay. Did he touch you—well, here. It's kind of hard to use the dolls. Did he touch you on the outside of your shorts?

[A.B.:] Yes.

[THE STATE:] Okay. With what part of his body did he touch you?

[A.B.:] His finger.

[THE STATE:] Okay. And you and I talked a little bit about what that part of your body is like, didn't we?

[A.B.]: Yes.

[THE STATE:] And we talked about there being some outer lips to it and then, on the inside, there was a hole. Do you remember that?

[A.B.:] Yes.

[THE STATE:] Okay. Did he—did his fingers go inside those outer lips?

[A.B.:] Yes.

[THE STATE:] The area where it's kind of damp inside?

[A.B.:] Yes.

[THE STATE:] Did his finger go into the hole?

[A.B.:] No.

[THE STATE:] Just on that outside damp area?

[A.B.:] Yes.

[THE STATE:] Okay. Did his fingers ever touch your underwear?

[A.B.:] Yes.

[THE STATE:] Okay. Can you tell us how he was touching you down there?

[A.B.:] He was pushing hard.

[THE STATE:] Okay. Were your shorts still on when he was doing this?

[A.B.:] Yes.

[THE STATE:] Okay. So you never took them completely off?

[A.B.:] No.

5. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

6. *Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim. App.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

7. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

8. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

9. *Matson*, 819 S.W.2d at 846.

[THE STATE:] Okay. And did his hand—how did his hand get in your shorts? Was it from the bottom or from the top?

[A.B.:] The top.

This court has held that the term "female sexual organ" as used in the context of section 22.021(a)(1) of the Texas Penal Code [10] includes more than just the vagina.[11] The State directs our attention to *Vernon v. State*.[12] In *Vernon*, the Court of Criminal Appeals stated:

> [P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think the phrase "penetration ... female sexual organ" is fairly susceptible of an understanding which includes the kind of touching proven in this case.[13]

A.B. testified that Rodda's fingers went inside the outer vaginal lips into the "damp area." She also indicated that Rodda's hand was inside her shorts. Even if Rodda's hand was not inside her shorts, penetration of the vaginal lips with his hand or fingers outside her clothing would, nonetheless, constitute penetration. The offensive act is the penetration of the female sexual organ with his hand or fingers. It does not matter whether his hand was encased in a glove or between her panties and her shorts or outside her shorts so long as his hand accomplished the penetration.[14]

In the case before us, however, a rational trier of fact could understand from A.B.'s testimony that Rodda's hand got in her shorts from the top, that his fingers went inside the labia, and that his fingers touched her underwear as evidence that Rodda's hand went inside her shorts and her underwear when the penetration occurred. Rodda's third point of error is overruled.

### Failure to Suppress Evidence

█ Rodda filed a motion to suppress evidence that he claimed was illegally seized by the State. The evidence in question was property Rodda had left with third parties for safekeeping. The third parties turned over the property in question to the State. The evidence complained of, however, was neither offered nor admitted into evidence at trial.

On appeal, Rodda complains that he was unable to adequately prepare a defense because he thought the property would be admitted into evidence. Because it was neither offered nor admitted into evidence, his trial strategy was profoundly affected. Rodda's complaint is unclear to this court. He seems to complain that because the State did not offer the evidence that he claims was illegally seized, he was harmed. The friends to whom Rodda entrusted his property had authority and control over that property equal to that of Rodda. When they allowed the police to search and seize the property, they were acting within their authority.[15] The trial court did not abuse its discretion in denying Rodda's motion to suppress, nor can we fathom any harm suffered by Rodda had the motion to suppress been improperly denied. Because the jury was never made aware of the existence of the evidence and the evidence was never before the jury, Rodda benefitted to the same degree he would had benefitted had the court granted his motion to suppress. Rodda's fourth point of error is

10. Tex. Penal Code Ann. § 22.021(a)(1) (Vernon Supp.1996).

11. *Bryant v. State*, 685 S.W.2d 472, 474 (Tex. App.—Fort Worth 1985, pet. ref'd).

12. 841 S.W.2d 407 (Tex.Crim.App.1992).

13. *Vernon*, 841 S.W.2d at 409–10.

14. *Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim.App. [Panel Op.] 1978); *Cruz v. State*, 742 S.W.2d 545, 548 n. 2 (Tex.App.—Austin 1988, no pet.).

15. *See Hall v. State*, 643 S.W.2d 738, 740–41 (Tex.Crim.App.1983).

**379**

overruled. The trial court's judgment is affirmed.