# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00528-CR

**Felix Mosqueda, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 99-028, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

---

Appellant Felix Mosqueda appeals from his convictions for indecency with a child and for aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. '' 21.11(a)(1), 22.021(a)(1)(B)(i)(2)(B) (West Supp. 2002). The jury assessed appellant=s punishment for indecency with a child at imprisonment for twenty years and a fine of $1,000 and for aggravated sexual assault of a child at imprisonment for forty years and a fine of $1,000. Appellant asserts that the evidence is legally and factually insufficient and that his trial counsel was ineffective. We will affirm the judgment.

## Background

In the evening of July 18, 1998, Geneva Alvarez took her five-year-old daughter C.G., the victim of the alleged offenses, and her seven-year-old son to stay overnight with her mother, the children=s grandmother, Yolanda Alvarez. Yolanda was living with appellant. That night, Yolanda

and her grandchildren slept on the living room floor.  Appellant slept in his bedroom.  Yolanda got up early in the morning to go to work and left the house while the children were sleeping.

C.G., who was eight years old at the time of trial, testified that she was awakened when appellant touched her Aprivate@ with his hand underneath her panties.  By Aprivate,@ C.G. testified she meant that Ahole in your body that you pee-pee from.@ When she was asked if appellant=s finger went inside the hole, she replied that it did not.  C.G. was afraid appellant would hurt her; she cried and told him to stop and he did.  Appellant was not wearing a shirt; he was wearing only his underwear.

At about 7:30 a.m., Geneva came to get her children.  Yolanda was not there.  Appellant told Geneva that C.G. had been crying and that he had to lie down with her to keep her from crying.  As Geneva and her children were driving away from her mother=s house, her son said his sister C.G. had been crying a lot.  C.G. was upset and told her mother that appellant Awas doing this to me.@  C.G. Aholding on to herself@ in her Aprivate area@ told her mother, A[h]e did this to me; he did this inside of me with his fingers and his hand.@  By gestures, C.G. showed her mother that appellant had put two fingers inside of her female sexual organ.  Geneva consulted with her husband and then took C.G. to the sheriff=s office.  Geneva made a written statement to Caldwell County Deputy Sheriff James Blanton.  Blanton did not interview C.G. because he knew she would later have a videotaped interview.  Blanton accompanied Geneva when she took C.G. to the Central Texas Medical Center in San Marcos for an examination.

Medical records relating to the examination of C.G. were admitted in evidence.  The records included the notes of the APrimary Care Nurse.@ The nurse noted that C.G. complained of a sexual assault.  C.G. told the nurse that while staying overnight at her grandmother=s house, her grandmother=s boyfriend had put his hand under her panties.  C.G. showed the nurse how appellant had put two of his fingers in her vagina.  In her examination of C.G., the nurse noted C.G. was crying and in her vaginal examination of C.G. the nurse noticed Asome redness to labia.@

Dr. Randolph Skyboldt, a certified emergency room physician at the hospital, examined C.G.  Dr. Skyboldt testified about his examination of C.G. and about the hospital records.  Dr. Skyboldt testified that C.G. complained of pain in the left and right labia minora just inside the female genitalia.  Dr. Skyboldt observed mild erythema meaning a mild but unexpected abnormal redness and tenderness of the labia in the area about which C.G. complained.  Further, Dr. Skyboldt testified:

Q:  When you compare the history and statement made by C.G. and the results of your examination of the child, can you make a diagnosis -- you made a diagnosis; is that correct?

A:  Correct.

Q:  And your words are Achild molestation@?

A:  Correct.

Q:  Now, sir, if it happened like the child told the nurse it did happen, that the grandmother=s boyfriend inserted two fingers inside the vaginal opening, in other words, the female sexual organ of the child, were the things you saw in your examination, the tenderness, the redness, consistent with sexual abuse conduct in that manner?

A:  Yes.

Q: But in fairness, you could not and cannot rule out other causes for the things you saw, true?

A: True.

On July 23, 1998, Geneva took C.G. to the Child Advocacy Center in Austin. Marcia Wilson, the clinical director, interviewed C.G. about the matters leading to the charges against appellant. The interview was videotaped and Wilson testified that the videotape admitted in evidence was accurate. The tape was admitted without objection and exhibited to the jury. Wilson testified, and the videotape shows, that C.G. demonstrated with anatomically correct dolls that the male doll≠s finger penetrated the female sexual organ of the female doll. C.G. told Wilson that this was what appellant did to her.

A two count indictment alleged that appellant intentionally and knowingly with his hand touched a part of the genitals of C.G. with the intent to gratify his sexual desire and that appellant penetrated the female sexual organ of C.G. with his finger.

### Insufficient Evidence Claim

In his first point of error, appellant contends that the evidence is legally insufficient to support the jury≠s verdict for either the offense of indecency with a child or aggravated sexual assault of a child. Specifically, appellant argues that the State failed to prove the allegation that he penetrated the sexual organ of the victim with his finger.[1]

---

[1] Appellant argues that in this case,

the evidence is legally insufficient to support the verdict of guilt as to the allegations of aggravated sexual assault by penetration of the sexual organ of C.G. by means of the finger of Felix Mosqueda because even after viewing the evidence in the light most favorable to the prosecution no trier of fact could have found that there was penetration. In the child≠s own words during sworn testimony, she

**4**

denied that Felix Mosqueda stuck his fingers in her female sexual organs.  Also, the Child Advocacy interviewer, Marcia Wilson, without leading the child merely elicited a >that=s it= when talking with C.G.  It was not until Ms. Wilson directed C.G. to pick up the demonstration dolls and the male doll=s pants fell off did C.G. put the male doll=s hand on the female doll=s sexual organ.  The video interview does not clearly and unequivocally show penetration.

In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.CAustin 2000, pet. ref=d). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All of the evidence that the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *also see Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.CAustin 1997, no pet.).

Neither Afemale sexual organ@ or Apenetration@ is statutorily defined. However, the Court of Criminal Appeals has determined the meaning of these terms as used in the aggravated sexual assault statute. *See* Tex. Pen. Code Ann. ' 22.021. (West Supp. 2002).

> [P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe appellant=s touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think the phrase Apenetration . . . female sexual organ@ is fairly susceptible of an understanding which includes the kind of touching proven in this case.

*Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *Rodda v. State*, 926 S.W.2d 375, 378 (Tex. App.CFort Worth 1996, pet. ref=d); *see also Oliva v. State*, 942 S.W.2d 727, 730 (Tex.

App.CHouston [14th Dist.] 1997), *pet. dism=d improvidently granted*, 991 S.W.2d 803, 804 (Tex. Crim. App. 1998); *Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.CSan Antonio 1995, pet. ref=d). APenetration, within the meaning of Section 22.021 of the Penal Code, occurs so long as contact with the female sex organ could reasonably be regarded . . . as more intrusive than contact with the outer vaginal lips.@ *Karns v. State*, 873 S.W.2d 92, 96 (Tex. App.CDallas 1994, no pet.) (citing *Vernon*, 841 S.W.2d at 409). Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute. *Id.* at 96. Penetration of the vaginal canal is not required to prove penetration. *Id.* AFemale sex organ@ is more general than Avagina@ and refers to the entire female genitalia including both vagina and vulva. *Aylor v. State*, 727 S.W.2d 727, 729 (Tex. App.CAustin 1987, pet. ref=d).

Here, the victim was awakened with the appellant=s hand underneath her panties. As soon as she was out of appellant=s presence, C.G. made an immediate outcry to her mother; C.G. gesturing with two fingers showed her mother that appellant had put his fingers in her female sexual organ. C.G. showed the hospital nurse how appellant had put two fingers in her female sexual organ. When the nurse examined C.G., she found some redness of the labia. C.G. complained to the emergency room physician of the pain of the right and left labia minora. The physician found tenderness and redness of the labia minora; these conditions and C.G.=s complaint were consistent with Asexual molestation.@ With anatomically correct dolls, C.G. demonstrated for the clinical director of the Travis County Children=s Advocacy Center how appellant penetrated her sexual organ with his finger.

We conclude that the direct and circumstantial evidence when viewed in the light most favorable to the prosecution supports a rational finding that the essential elements of the charged

offenses were proved beyond a reasonable doubt.  The verdict of the jury, the finder of fact, is

supported by legally sufficient evidence.  Appellant=s first point of error is overruled.

In his second point of error, appellant complains that the evidence is factually

insufficient to support the jury=s verdict finding him guilty of indecency with a child and aggravated

sexual assault of a child.  Appellant argues that the evidence is factually insufficient because the

redness of the victim=s female sexual organ can be explained by evidence other than digital

penetration.[2]

In a factual sufficiency review, we are required to give deference to the jury=s verdict

and examine all of the evidence impartially, setting aside the jury verdict Aonly if it is so contrary to

the overwhelming weight of the evidence as to be clearly wrong and unjust.@  *Cain v. State*, 958

S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App.

1996).  The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual

---

[2] Appellant argues that,

> when reviewing the issue of factual sufficiency of the evidence, Dr. Skyboldt did
> not explicitly testify that the only cause of redness on the female sexual organ of
> C.G. came from digital penetration.  He testified that bed wetting could also cause
> such mild redness.  His testimony coupled with the testimony of the grandmother
> that C.G.=s private area was red on the night of July 18, 1998, to the point that
> she medicated the area with Vaseline, tips the scale in favor of a not guilty verdict
> when weighed on appeal for factual sufficiency.

sufficiency review is to determine whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

We will consider the additional evidence. Appellant testified in his own defense and offered the testimony of Yolanda Alvarez and of his landlord and neighbor Otto Ewald. Appellant testified that he had lived in a trailer house owned by Ewald for about nine years. Yolanda had lived with him for about six years. Appellant had been disabled and unable to work for about five years due to a dislocated shoulder joint. Also, appellant testified that he had had three strokes and had high blood pressure that prevented him from having his shoulder surgically repaired. Following his strokes, he had carotid artery surgery. Appellant testified that his strokes left him without the ability or desire to have sex with a woman. Appellant denied that he had ever placed his hand on, or put his finger in, the victim=s vagina. On the occasions when Geneva=s children spent the night at appellant=s house, they slept on the floor because of C.G.=s bed-wetting problem. Further, appellant testified that he could not get down on the floor and then get up without assistance. Appellant attributed blame for the charges being brought against him to Geneva. Appellant testified Geneva instigated the complaint against him so that her mother would come and live with her and baby-sit her children.

Otto Ewald testified that appellant rented a trailer house from him and that they had been neighbors for about ten years. Ewald lived about 100 yards from appellant. Ewald testified he

**9**

himself had a heart condition that kept him near his house; he was aware of appellant=s health problems resulting from his stroke, neck surgery, and partial paralysis.

Yolanda Alvarez lived with and had a relationship with appellant that began before his first disabling stroke. Yolanda testified that appellant also suffered from high blood pressure and sugar diabetes. Yolanda also testified that, due to his failing health, appellant walked with a cane and was unable to get down on the floor and get back up unassisted. Since his stroke in the summer of 1998, appellant=s sex life was diminished to a point where Yolanda found it necessary for her to be the aggressor in initiating sexual activity. However, Yolanda testified that if she worked at it appellant could have sex; at times, he would initiate the romance and contact.

The night before the alleged offenses when Yolanda was bathing her grandchildren she noticed that C.G. had a rash that Yolanda thought might be caused by bed wetting. Yolanda applied Vaseline to the rash. Yolanda took C.G. to the bathroom during the night so C.G. would not urinate in her sleep.

After examining all of the evidence impartially and giving deference to the jury=s verdict, we conclude that the jury=s verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the evidence both for and against the jury=s verdict, we find it fails to show that the proof of appellant=s guilt is so obviously weak as to undermine confidence in the jury=s determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. The evidence is factually sufficient to support the jury=s verdict. Appellant=s second point of error is overruled.

**Assistance of Counsel**

**10**

In his third point of error, appellant urges that his trial counsel was ineffective for not presenting medical testimony about his health problems. Appellant faults his trial counsel for failing to call physicians and presenting evidence that his strokes could have decreased or eliminated his Asexual drive.@ Further, appellant contends that if his sexual desire had decreased, he would have had no desire Ato touch any female sexually.@

To show ineffective assistance of counsel, appellant must show that: (1) counsel=s performance was deficient, in that counsel made such serious errors that he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Cardenas v. State*, 30 S.W.3d 384, 391 (Tex. Crim. App. 2000); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Shaw v. State*, 874 S.W.2d 115, 118 (Tex. App.CAustin 1994, pet. ref=d). Appellant bears a heavy burden to prove his ineffective assistance claim. *Strickland*, 466 U.S. at 690. Counsel is strongly presumed to have provided adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.*

A defendant does not waive his constitutional right to effective assistance of counsel by failing to raise that issue in the trial court. *Robinson v. State*, 16 S.W.3d 808, 812 (Tex. Crim. App. 2000). However, rarely will the record on direct appeal be sufficient to prove that counsel=s performance was deficient. *Id.* at 813 n.7; *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). To defeat the presumption that reasonable professional assistance was rendered, any allegation of ineffectiveness must be firmly found in the record. *Id.* at 814; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

Appellant=s contention raised on appeal finds no basis in the record; appellant=s argument on appeal is purely speculative; it fails to show counsel=s alleged ineffectiveness. The record does not show that medical evidence was available to prove appellant=s contention. We must Aindulge a strong presumption that counsel=s conduct falls within the wide range of reasonable representation.@ *McFarland*, 928 S.W.2d at 500. Appellant has failed to overcome the strong presumption that trial counsel was acting effectively. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998); *Gravis v. State*, 982 S.W.2d 933, 937 (Tex. App.CAustin 1998, pet. ref=d). Appellant has failed to demonstrate that his trial counsel=s performance was deficient or that his defense was prejudiced to the degree that he was deprived of a fair trial. Appellant=s third point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Dally[*]

Affirmed

Filed: June 21, 2002

Do Not Publish

**12**

&ast; Before Carl E. F. Dally, Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov≠t Code Ann. ' 74.003(b) (West 1998).