PD-0029-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/5/2015 1:28:47 PM
Accepted 2/6/2015 9:02:43 AM
ABEL ACOSTA
CLERK

NO. PD-0029-15

# IN THE
# COURT OF CRIMINAL APPEALS
# OF TEXAS

_____

## LUIS RUBEN ISLAS MARTINEZ,
Appellant/Petitioner

vs.

## THE STATE OF TEXAS,
Appellee/Respondent

_____

## APPELLANT'S PETITION FOR
## DISCRETIONARY REVIEW

_____

Cause No. 05-13-00953-CR
Court of Appeals, Fifth District
At Dallas, Texas

_____

Lawrence B. Mitchell
SBN 14217500
P.O. Box 797632
Dallas, Texas 75379
Tel. No. 214.870.3440
E-mail: judge.mitchell@gmail.com

Attorney for Petitioner/Appellant

FILED IN
COURT OF CRIMINAL APPEALS

February 6, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

PRESIDING JUDGE:    Honorable Gary R. Stephens, sitting by assignment for the Honorable Carter Thompson, the Presiding Judge of Criminal District Court No. 5, Dallas County, Texas

PARTIES:    Luis Ruben Islas Martinez, Appellant/Petitioner

The State of Texas, Appellee/Respondent

Counsel:    Trial counsel: Faustino Larrea, Jr., P.O. Box 191947, Dallas, Texas 75219

Appeal counsel: Lori Ordiway, P.O. Box 793991, Dallas, Texas 75379

Petition for Discretionary Review Counsel: Lawrence B. Mitchell, P.O. Box 797632, Dallas, Texas 75379

Trial counsel for the State: Shawnkeedra Housto-Martin, Assistant District Attorney, Dallas County, Texas, 133 N. Riverfront Blvd., Dallas, Texas 75207

Appellate counsel for the State: Patricia P. Noble, Assistant District Attorney, Dallas County, Texas, 133 N. Riverfront Blvd., Dallas, Texas 75207

Trial, Appellate and Petition counsel for the State: Susan Hawk, Criminal District Attorney, Dallas County, Texas or her designated representative, 133 N. Riverfront Blvd., Dallas, Texas 75207

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel...................................................................i

Table of Contents ...................................................................................................ii

Index of Authorities...............................................................................................iii

Statement Regarding Oral Argument......................................................................v

Statement of the Case and Procedural History .....................................................vi

Ground for Review: ...............................................................................................1

I.

WHETHER THE COURT OF APPEALS ERRED IN JUDICIALLY DEFINING THE WORD "CONTACT" AS CONTAINED IN THE OFFENSE OF AGGRAVATED SEXUAL ASSAULT SO AS TO ALLOW THE EVIDENCE TO BE DETERMINED LEGALLY SUFFICIENT WHEN THE EVIDENCE SHOWED ONLY THAT THE GENITAL TO GENITAL "CONTACT" OCCURRED WHILE BOTH APPELLANT AND THE VICTIM WERE CLOTHED

Argument..................................................................................................................2

Conclusion...............................................................................................................8

Certificate of Word-Count Compliance..................................................................9

Certificate of Service..............................................................................................9

Appendix

# INDEX OF AUTHORITIES

## Cases:

*Boykin v. State*, 818 S.W.2d 782 (Tex .Crim. App.1991)..........................................4

*Cagle v. State*, 976 SW2d 879 (Tex. App. - Tyler, 1998)........................................3

*Daniels v. State*, 754 S.W.2d 214 (Tex. Crim. App.1988).......................................3

 *Dowthitt v. State*, 931 S.W.2d 244 (Tex .Crim. App.1996)....................................4

*Ex parte Kuester*, 21 S.W.3d 264 (Tex. Crim. App.2000).......................................4

*L. B. Foster Co. v. State,*  106 S.W.3d 194
       (Tex. App.–Houston [1ˢᵗ Dist.]2003)................................................................4

*Jones v. State*, 2000 WL 675714 (Tex. App. - Houston [14ᵗʰ Dist.] 2000)..............3

*Fleming v. State,*  341 S.W.3d 415 (Tex. Crim. App. 2011)....................................5

*Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)........6

*Nguyen v. State*, 1 S.W.3d 694 (Tex. Crim. App.1999)...........................................4

*State v. Laird*, 38 S.W.3d 707 (Tex. App. - Austin 2000)........................................4

*Weyandt v. State*, 35 S.W.3d 144 (Tex. App.-Houston [14ᵗʰ  Dist.] 2000).............3,4

### STATUTES:

TEX. PENAL CODE ANN. §21.11(a) (1) & (c) (1) & (2)................................5

TEX. PENAL CODE §22.021 (a) (1) (B) (iii)(2) (B) (e)....................................vi,2

TEX. PENAL CODE §22.021 (a) (1) (B) (iv)................................6

TEX. GOV'T. CODE ANN. §311.011 (a)........................................4

TEX GOV'T. CODE ANN. §311.021 (a)........................................4

T. TEX. GOV'T. CODE ANN. § 311.023(4).......................................5


### Texas Rules of Appellate Procedure:

TEX. R. APP. P. 47.4 (a)........................................8

TEX. R. APP. P. 66.3 (b).......................................v,8

TEX. R. APP. P. 9.4 (i) (3)........................................9

TEX. R. APP. P. 9.4 (i) (1)........................................9

TEX. R. APP. P. 9.4 (i) (2) (D)........................................9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because the issue to be resolved is an important one that has not been but should be settled by the Court of Criminal Appeals. *See* **TEX. R. APP. P. 66.3 (b)**. The purpose of the argument is to help determine the meaning and breadth of a heretofore undefined word, to wit: "contact" as used as an element of the offense of Aggravated Sexual Assault. This Honorable Court has judicially explained the meaning of similar allegations of "contact" while interpreting other sexual offences. However, because of significant differences in the various penal statutes, especially the offense of Indecency with a Child, that definition is inappropriate for the offense of Aggravated Sexual Assault when genital to genital contact is alleged in the indictment. Oral argument will highlight and clarify the distinctions and therefore assist the Court in resolving the issue.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

In Cause No. F13-00162-L Appellant was charged by indictment returned by the Dallas County Grand Jury with the first degree felony offense of Aggravated Sexual Assault. The case was assigned to Criminal District Court No. 5 for disposition. The indictment alleged an offense prohibited by **TEX. PENAL CODE §22.021 (a) (1) (B) (iii)(2) (B) (e)**: intentional or knowing sexual contact with a child younger than fourteen (14) years of age. (CR: 8). Appellant waived the right to a jury trial (with the consent and approval of the district court and the State) and entered a plea of "Not Guilty". (CR 11, 14); (RR3: 5-7). Appellant was found guilty and sentence was assessed at confinement in the penitentiary for eight (8) years and a fine of $4000.00. (RR4: 83; RR5: 8). Appellant's timely Motion for New Trial was overruled by the district court; Appellant then gave Notice of Appeal to the Court of Appeals for the Fifth District of Texas at Dallas. The published opinion of the court of appeals affirming and modifying appellant's conviction was delivered on December 9, 2014. No Motion for Rehearing was filed.

**GROUND FOR REVIEW**

I.

WHETHER THE COURT OF APPEALS ERRED IN JUDICIALLY DEFINING THE WORD "CONTACT" AS CONTAINED IN THE OFFENSE OF AGGRAVATED SEXUAL ASSAULT SO AS TO ALLOW THE EVIDENCE TO BE DETERMINED LEGALLY SUFFICIENT WHEN THE EVIDENCE SHOWED ONLY THAT THE GENITAL TO GENITAL "CONTACT" OCCURRED WHILE BOTH APPELLANT AND THE VICTIM WERE CLOTHED

## ARGUMENT

The indictment returned against Appellant alleged the offense of Aggravated Sexual Assault committed by genital to genital contact. The indictment alleged that Appellant intentionally and knowingly caused the victim's sexual organ to contact the sexual organ of Appellant and that the victim was under the age of fourteen (14). (CR: 8). See **TEX PENAL CODE ANN. §22.021(a)(1)(B)(iii)(2)(B)**. As set forth in the opinion below, and undisputed by the parties, the contact occurred while both Appellant and the victim were clothed and that none of the contact occurred "skin to skin" or "skin to clothed body".

Appellant argued on direct appeal that the evidence presented at trial was insufficient when the only contact proven happened while he and the victim were clothed. In reviewing the sufficiency claim, the court of appeals set forth the relevant testimony (See Appendix attached hereto) which described genital contact occurring while both parties were clothed. In order to determine that this evidence was sufficient to prove the offense charged, the court of appeals had to determine if such contact would prove the offense charged.

In resolving the issue, the court of appeals was unable to cite to any dispositive decision on the issue by this Honorable Court. Instead, the court of appeals referred to two decisions by sister courts of appeals. In each of those cases, "contact" was

2

defined by the reviewing court as any touching of the genital areas even with the interposition of clothing. See *Cagle v. State*, 976 SW2d 879, 882 (Tex. App. - Tyler, 1998) and *Jones v. State*, 2000 WL 675714 (Tex. App. - Houston [14th Dist.] 2000). Though both cases do provide a "touching" definition for the word "contact", the cases are somewhat ambiguous. Neither case sets forth the allegations in the indictment. Although both cases do refer to "contact", each case also explains that there was also sexual penetration and in both cases it appears that the object used by the defendant was "skin" contacting or penetrating the victim who was in some fashion clothed. Neither case therefore appears to resolve the exact issue as to whether "contact" can occur when both genital areas are clothed. No decision by this Honorable Court has so held.

There is, of course, nothing improper or unusual for an appellate court to determine the meaning of a word contained within a statute when that word has not been defined by the Legislature. It is often noted in case law that, generally, undefined words in statutes are given their plain meaning by the appellate court unless the statute clearly shows that they were used in another sense or specifically defined by the Legislature. *See Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App.1988); *Weyandt v. State*, 35 S.W.3d 144, 155 (Tex. App.-Houston [14th Dist.] 2000). Under those circumstances, statutory words are to be read in context and

construed according to the rules of grammar and common usage. *Weyandt*, 35 S.W.3d at 155; *L.B. Foster Co. v. State,* 106 S.W.3d 194, 203 (Tex. App.–Houston [1st Dist.] 2003). This follows the mandate contained in the Code Construction Act: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." **TEX. GOV'T CODE ANN. §311.011 (a)**.

Traditionally the courts have held that the starting point for statutory analysis is to review the text of the statute under review. *Ex parte Kuester*, 21 S.W.3d 264, 266 (Tex. Crim. App.2000); *State v. Laird*, 38 S.W.3d 707, 712 (Tex. App. - Austin 2000). In determining the plain meaning of a statute, the words and phrases will be read in context and that plain language of the statute will be applied unless the language is ambiguous or could lead to an absurd result. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex .Crim. App.1991); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex .Crim. App.1996). The reviewing court should give rational effect to the whole statute, not interpreting any phrase or word in isolation, but looking at the phrase or word in the context of the entire statute. *Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App.1999). The reviewing court will presume that a proper interpretation of the statute will lead to "...a just and reasonable result...". **TEX GOV'T. CODE ANN. §311.021 (a).** Furthermore, the Code Construction Act allows an appellate court to construe a provision in light of existing statutes covering the same or similar subjects.

**TEX. GOV'T CODE ANN. § 311.023(4)**. It is this last rule of statutory construction that is especially relevant to the current issue.

The related offense of Indecency with a Child also criminalizes genital to genital contact although with a child younger than seventeen (17) years of age. **TEX. PENAL CODE ANN. §21.11(a) (1) & (c) (1) & (2)**. More specifically, the statute proscribes genital contact even through clothing **if** the contact is done with the intent to arouse or gratify the sexual desire of any person. With this additional *mens rea*, the definition prohibiting genital contact with a child, even through clothing, whether provided by Legislative enactment or through court interpretation, is sensible and appropriate.

Unlike the offense of Indecency with a Child, the offense of Aggravated Sexual Assault does not require that genital contact be done "with the intent to arouse or gratify the sexual desire of any person. The offense alleged by indictment against Appellant is under Texas's strict-liability child sexual assault statute. *Fleming v. State,* 341 S.W.3d 415, 415 (Tex. Crim. App. 2011). If the actor engaged in the conduct intentionally and knowingly, any genital to genital contact with a child would be in violation of the penal statute, as interpreted by the court of appeals, to include contact even though both the actor and the victim were clothed when the contact occurred. This broad and expansive definition could criminalize otherwise legal

behavior.

For example, the Aggravated Sexual Assault statute forbids contact by the actor's sexual organ with the anus of the victim. **TEX. PENAL CODE §22.021 (a) (1) (B) (iv)**. However, many forms of modern dancing, and Latin dancing as well, are performed with very close personal contact between the genital area, usually the male, and the posterior of the female. "Sandungueo" is a dance and party music associated with "reggaeton" that emerged in the early 2000's in Puerto Rico. It is a dance that focuses on grinding, also known as "perreo," with one partner facing the back of the other (usually male behind female). Other similar forms of dancing are known as "booty dancing," "grinding," "dirty grinding," or "twerking." Under the definition provided by the court of appeals, this otherwise legal activity would be criminalized. This would violate the basic principle of criminal law that a person should not be convicted of a crime if he had no reason to believe that the act he committed was a crime or that it was wrongful. *Morissette v. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952). Appellant's behavior may have, at the discretion of the fact-finder, been a violation of the Indecency with a Child statute, even though the contact was through clothing if it was done with intent to arouse and gratify sexual desire. However, if the word "contact" is properly defined judicially as by either "skin to skin" contact or "skin through clothing" contact, then he did not

6

commit the crime of Aggravated Sexual Assault and the evidence would have been

insufficient to support the guilty verdict and subsequent sentence.

## CONCLUSION

The decision of the court of appeals as to the proper definition of the word "contact," as contained in the Aggravated Sexual Assault statute, has decided an important question of State law that has not been, but should be, settled by the Court of Criminal Appeals. See **TEX. R. APP. P. 66.3 (b)**. It should also be noted that the court of appeals designated its opinion for publication. Under the applicable appellate rule, an opinion should be designated a memorandum opinion unless, as relevant to the issue resolved in the case, the opinion "...establishes a new rule of law..." See **TEX. R. APP. P. 47.4 (a)**. An appropriate reason for this Honorable Court to grant this Petition for Discretionary Review having been presented, the Petition should be granted and further briefing by the parties should be ordered.

Respectfully submitted,

/s/Lawrence B. Mitchell

Lawrence B. Mitchell
SBN 14217500
P.O. Box 797632
Dallas, Texas 75379
214.870.3440
judge.mitchell@gmail.com

Counsel for Petitioner/Appellant

## CERTIFICATE OF WORD-COUNT COMPLIANCE

I hereby certify, in compliance with Rule 9.4 (i) (3) of the Texas Rules of Appellate Procedure, that this document contains 1,392 words, including all contents except for the sections of the Petition to be excluded by Rule 9.4 (i) (1) of the Texas Rules of Appellate Procedure, and in compliance with Rule 9.4 (i) (2)(D) of the Texas Rules of Appellate Procedure.


/s/ Lawrence B. Mitchell


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Petition for Discretionary Review is being served of this the 5th day of February, 2015 via the service function in eFile Teas, on the attorneys for the State: (1) Patricia Noble, Assistant District Attorney, Dallas County, Texas to pnoble@dallascounty.org and (2) the State Prosecuting Attorney at information@spa.texas.gov.


/s/ Lawrence B. Mitchell


9

APPENDIX

Court of Appeals of Texas,

Dallas.

Luis Ruben IslasMartinez, Appellant

v.

The State of Texas, Appellee

No. 05–13–00953–CR

Opinion Filed December 9, 2014.

On Appeal from the Criminal District Court No. 5, Dallas County, Texas

Trial Court Cause No. F13–00162–L

Before Justices O'Neill, Lang–Miers, and Brown

**OPINION**

Opinion by Justice Lang–Miers

Luis Ruben IslasMartinez FN1 appeals his conviction for aggravated sexual assault of a child by contact. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp.2014). In two issues, appellant argues that the evidence is insufficient to support the conviction and his trial lawyer rendered ineffective assistance. We modify the judgment to reflect the pronouncement of a $4,000 fine and, as modified, affirm the trial court's judgment.

FN1. In his brief, appellant spells his last name with a space between "Islas" and "Martinez." However, in the indictment and the trial court's judgment, appellant's last name is spelled "IslasMartinez," without a space. We use the spelling that comports with the judgment.

**Factual Background**

For several months in 2011, appellant and his wife did not live together, and appellant had custody of his stepdaughter E.R. and E.R.'s five siblings. E.R. was the oldest and was around twelve or thirteen years of age at the time. For a reason E.R. did not recall, she began sleeping in appellant's bed "sometimes." She said she considered appellant "like a boyfriend" and thought she was in love with him. She described how she and appellant would lie in the bed with their clothes on and hug, kiss with their tongues, and "hump." She explained that by "hump" she meant appellant would lie on his back on the bed, she would lie on top of him with her legs on either side of appellant, and they would "hump." She did not recall how this conduct started, and she estimated that they engaged in this activity "[t]en or less" times and always wore clothing.

Using diagrams of unclothed children, E.R. circled the parts of her and appellant's bodies that touched when they would "hump." She circled the genital area on both diagrams and referred to the area on the girl diagram as the "vagina." She did not know what the circled area on the boy diagram was called, but she said it was "hard," it felt "good," it rubbed against her "vagina," and it made her "vagina" feel "good." E.R. testified that appellant also rubbed her breast under her shirt when she was sleeping and rubbed her butt under her panties once when they were watching a movie.

Two of E.R.'s younger sisters testified that they saw E.R. and appellant in bed together. Both said E.R. was lying on top of appellant. One sister saw E.R. kiss appellant's cheek. She said she thought this was "normal" behavior at first, but she changed her mind the more she thought about it. She said there were times when appellant would send all the children except E.R. to bed early and then she would hear appellant's bed "squeaking." She testified that she was confused and told Mother about what she saw and heard. The other sister testified that she was sleeping in

the bed with appellant and E.R. one night when she awoke because the bed was moving. She pretended to be asleep and saw E.R. on top of appellant. E.R. told appellant to kiss her and appellant said, "Where?" She did not see E.R. moving on top of appellant.

Mother purchased a clock with a hidden video camera and gave it to one of E.R.'s sisters to place in appellant's home. The sister placed the clock/camera in the living room and facing appellant's bedroom. Mother obtained the recordings and watched them. They showed E.R. and appellant face-to-face in a full frontal embrace, walking around the living room and bedroom areas. E.R. was walking backwards with her feet on top of appellant's feet; appellant was often smoking a cigarette. In one of the recordings they were leaning against a wall in this embrace. In another they were walking into the bedroom and appellant fell backwards onto the bed and E.R. fell on top of him. E.R. stayed on top of appellant for several seconds. Both were fully clothed in the recordings.

When Mother asked E.R. about what had happened with appellant, E.R. said nothing had happened. Mother showed the recordings to the police and a detective interviewed E.R., but E.R. also told the detective that nothing had happened. About a month later, E.R. began to open up to Mother. Mother said E.R. was "a really nervous person" so Mother wrote down several questions to E.R. asking what happened, and E.R. answered the questions in writing. Although some of the questions and answers were difficult to read, we were able to discern several, including the following:

> 3 have you ever kiss [sic] in the mouth?
>
> 3        Yes I kiss hem [sic] in hes [sic] mouth
>
> 7 did he touch your breasts?

sometimes he will touch my breast when I sleep in his bed and then he will turn away

did he touch your vagina?

I dont [sic] think so

did he ever show you his private parts?

NO

did Luis ever told [sic] you not to tell anyone what was happening between you and him?

NO

Although we were unable to read question 10, E.R. answered that question as follows:

We dint [sic] not have real sex. he will have his pajamas on when he will get on top of me I will fill [sic] his private part rubbig [sic] against my virgina [sic].

After getting E.R.'s answers, Mother called the detective investigating the case and he interviewed E.R. again. The detective obtained a warrant for appellant's arrest, and the State charged appellant with aggravated sexual assault of a child by sexual-organ-to-sexual-organ contact.

Appellant waived his right to a jury trial and pleaded not guilty before the court. After the State put on the evidence recounted above, appellant testified in his defense and denied any inappropriate behavior with E.R. He denied that he "hump[ed]" E.R., fondled her breast, kissed her with his tongue, and that they were "boyfriend and girlfriend." He admitted that E.R. at times slept in his bed, but he said all his "children were wherever they felt comfortable." He said he had not seen the recordings from the hidden video camera, his lawyer did not show him the recordings, and he was unaware that the recordings showed him and E.R. "walking around

hugging from room to room, falling on the bed, [him] smoking a cigarette." When asked whether he thought this behavior was appropriate, he said he and E.R. "were always playing [.]" Later, appellant testified that his lawyer discussed the contents of the recordings with him "[m]ore or less, not very well."

The trial court found appellant guilty and assessed punishment at eight years' confinement and a $4,000 fine. Appellant's motion for new trial was overruled, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

### APPLICABLE LAW

As alleged in this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the female sexual organ of a child, who was not the spouse of the actor, to contact the sexual organ of the actor and the child is under the age of fourteen. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B). The offense as charged is a first-degree felony carrying a sentence of five to ninety-nine years or life and a fine up to $10,000. Id. §§ 12.32, 22.021(e).

### STANDARD OF REVIEW

In analyzing a claim of insufficient evidence, we view all the evidence and reasonable inferences from the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wise v. State*, 364 S.W.3d 900, 902 (Tex. Crim. App.2012). The factfinder resolves all conflicts in the evidence and is the exclusive judge of the credibility of the witnesses and the weight to give their testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App.2000).

**DISCUSSION**

Appellant first argues that the evidence is insufficient to support his conviction because the "contact" between his sexual organ and E.R.'s female sexual organ was not flesh-to-flesh. The State argues that the statute does not require flesh-to-flesh contact and that courts have construed "contact" in this context to include contact through clothing. We agree with the State.

The statute proscribing aggravated sexual assault of a child by contact does not define the term "contact." See TEX. PENAL CODE ANN. § 22.021. Our sister courts have construed "contact" in this context to include contact through clothing.

In *Caldwell v. State*, No. 03–96–00603–CR, 1998 WL 10280 (Tex.App.—Austin Jan. 15, 1998, no pet.) (mem. op., not designated for publication), the Austin Court of Appeals rejected the appellant's argument that sexual-organ-to-sexual-organ contact could not be through clothing. The evidence showed that the appellant got on top of the child, contacted the child's female sexual organ over her underwear with his sexual organ and "started going up and down." *Id*. at *1–2. The court said, " 'Contact' may be defined as 'touching.' " *Id*. at *2. "Proof of an act of sexual contact or touching need not be shown by flesh-to-flesh contact. If intentionally or knowingly done, sexual contact or touching may be through clothing." Id. To support its conclusion the court relied on opinions from the Texas Court of Criminal Appeals construing the terms "contact" and "sexual contact" in other sexual-offense contexts to include contact or touching through clothing. *Id*. at *2 (citing *Resnick v. State*, 574 S.W.2d 558, 559–60 (Tex. Crim. App. [Panel Op.] 1978), and *Miles v. State*, 157 Tex. Crim. 188, 247 S.W.2d 898, 899–900 (Tex. Crim. App.1952)).

In *Miles*, the court of criminal appeals construed the meaning of the word "contact" in the context of the offense of "indecent handling of a minor's sexual parts." 157 Tex.Crim. 188, 247

S.W.2d at 899–900. The appellant argued that his bare hand never touched the child's bare sexual organ and, as a result, the evidence was insufficient to support the conviction. *Id*. at 899. The court rejected that argument reasoning that "nothing in the statute suggest[ed] that the crime there denounced could be committed only by the application of the bare hand of the accused to the bare or naked sexual part of the child." Id. at 899–900. The court said, "under the guise of statutory construction, [we] cannot write into the statute that which obviously is not contained there." Id. at 900.

And when faced with a similar argument in a public-lewdness context, the court again construed "contact" to include contact through clothing. *Resnick*, 574 S.W.2d at 559–60. The court cited the dictionary definition of "touch" and stated:

> This definition makes it quite plain that the essence of the act of touching is to perceive by the sense of feeling. It is a matter of the commonest knowledge that the interposition of a layer of fabric between a person's hand and an object upon which the hand is placed will not prevent that person from feeling the object thus concealed. Were we to accept appellant's contention that he did not "touch" the officer's genitals because no flesh-to-flesh contact was made, absurd results would follow. Under such an analysis, a defendant who thrust his hand beneath a victim's undergarments and fondled his or her genitals in a public place could not be prosecuted for public lewdness if he were wearing a glove.

*Id*. at 560.

The Tyler Court of Appeals also has construed "contact" in the context of aggravated

sexual assault of a child to include contact through clothing. In *Cagle v. State*, 976 S.W.2d 879, 882 (Tex. App.—Tyler 1998, no pet.), the appellant argued there was no flesh-to-flesh contact and the evidence was insufficient to support the conviction. The court gave the term "contact" "its ordinary meaning according to its common usage," stating "contact" means " 'the act of touching or meeting' and 'close juxtaposition or touching of the bodies or person.' WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, unabridged, 2nd Ed." *Id*. The court concluded "that even assuming there was fabric between [the a]ppellant's penis and [the child's] anus, contact could have occurred." *Id.*

And the Houston First District Court of Appeals reached a similar result in *Jones v. State*, Nos. 01–98–01400–CR & 01–00–00489–CR, 2000 WL 675714 (Tex. App.—Houston [1st Dist.] May 25, 2000, pet. ref'd) (mem. op., not designated for publication), where the evidence showed that the appellant contacted the child's anus with his sexual organ through the child's boxer shorts. The court cited the *Cagle* opinion. *Id.* at *2. It also relied on the court of criminal appeals's decision in *Resnick. Id.* The court said "the same analysis [that the court in *Resnick* applied in the context of public lewdness] applies to 'contact' as it applies to aggravated sexual assault. There is no reason to apply a different meaning in the context of aggravated sexual assault." *Id.*

In this case, appellant argues that the cases discussed above were decided before legislative amendments to the definition of "sexual contact" in 2001 and, as a result, no longer apply. We disagree. In 2001, the legislature amended the definition of "sexual contact" for indecency with a child to include touching through clothing. See Act of May 23, 2001, 77th Leg., R.S., ch. 739, § 2, sec. (c), 2001 Tex. Gen. Laws 1463, 1463 (current version at TEX. PENAL CODE ANN. § 21.11(c) (West 2011)). But indecency with a child is a different offense, and the

legislature did not amend the statute for aggravated sexual assault of a child. The term "contact" was not statutorily defined before 2001, and it remains statutorily undefined. See TEX. PENAL CODE ANN. § 22.021. Consequently, we presume the legislature knew the construction that courts had given to the term when it chose not to define it. See *Miller v. State*, 33 S.W.3d 257, 260–61 (Tex. Crim. App.2000); *Williams v. State*, No. 05–03–00648–CR, 2004 WL 95204, at *2 (Tex. App.—Dallas Jan. 21, 2004, no pet.) (mem. op, not designated for publication) (rejecting argument that change to definition of "sexual contact" for indecency with a child impacted definition of "sexual contact" for public lewdness). And we presume the legislature intended the same construction to continue to be applied after the 2001 amendments. See *Miller*, 33 S.W.3d at 260–61; *Williams*, 2004 WL 95204, at *2.

In the context of aggravated sexual assault of a child by penetration, this Court and other courts have said that penetration may occur through clothing. See, e.g., *Flores v. State*, No. 13–12–00362–CR, 2013 WL 3326982, at *3 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op., not designated for publication); *Villanueva v. State*, No. 04–07–00599–CR, 2008 WL 3057289, at *7–8 (Tex. App.—San Antonio Aug. 6, 2008, no pet.) (mem. op., not designated for publication); *Limon v. State*, Nos. 05–98–01432–CR, 05–98–01433–CR, 05–98–01434–CR, 05–98–01435–CR, 2000 WL 1176591, at *4 (Tex. App.—Dallas Aug. 21, 2000, no pet.) (mem. op., not designated for publication); *Belasco v. State*, No. 01–97–00666–CR, 1999 WL 430802, at *2 (Tex.App.—Houston [1st Dist.] June 10, 1999, pet. ref'd) (mem. op., not designated for publication); *Rodda v. State*, 926 S.W.2d 375, 378 (Tex. App.—Fort Worth 1996, pet. ref'd). In those cases, the courts recognized that "[t]he offensive act is the penetration of the female sexual organ.... It does not matter whether [the defendant's] hand was encased in a glove or between her panties and her shorts or outside her shorts so long as his hand accomplished the penetration."

*Rodda*, 926 S.W.2d at 378. Here, the offensive conduct is the sexual-organ-to-sexual-organ contact with a child under the age of fourteen. See TEX. PENAL CODE ANN. § 22.021; *Jones*, 2000 WL 675714, at *2; Cagle, 976 S.W.2d at 882; *Caldwell*, 1998 WL 10280, at *2. It does not matter that the contact occurred through clothing—it is the deliberate and sexual nature of the act that is offensive. Appellant's construction that "contact" in this context must be flesh-to-flesh would lead to the absurd result that an actor could never be prosecuted for aggravated sexual assault of a child if the actor contacted a child's bare female sexual organ with his sexual organ while wearing a condom. See *Resnick*, 574 S.W.2d at 560. Under the guise of statutory construction, we will not write into a statute language that is not there. See *Miles*, 247 S.W.2d at 190. As other courts have done, we reject the argument that "contact" must be flesh-to-flesh and conclude that in the context of aggravated sexual assault of a child, contact may occur through clothing.

Appellant next argues that the evidence is insufficient because "the evidence shows that the complainant falsely accused [him] in this case and that he did not commit any offense." Appellant argues that no one saw any "sex act," some of the evidence was conflicting, and E.R. was not credible.

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp.2013). E.R. testified that she and appellant "hump[ed]" through clothing on multiple occasions. She identified the areas of their respective bodies that touched during these acts as her "vagina" and appellant's genital area. She described how appellant's genital area felt "hard" and made her "vagina" feel "good." And she testified that she was twelve or thirteen years of age at the time. In addition to E.R.'s testimony, the court heard testimony from Mother and E.R.'s siblings, and

watched recordings of appellant and E.R. walking around in a full frontal embrace and falling on the bed with E.R. on top of appellant. The factfinder resolved credibility issues and conflicts in the evidence against appellant, which it had the exclusive province to do. See *Wesbrook*, 29 S.W.3d at 111. We conclude that the State proved beyond a reasonable doubt that appellant committed aggravated sexual assault of a child as alleged in the indictment. We resolve issue one against appellant.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In issue two, appellant argues that his lawyer rendered ineffective assistance because his lawyer did not tell him about the video recordings. Appellant argues that if his lawyer had told him about the recordings, he "may well have decided to plead no contest or even guilty." He also argues that the trial court may have granted him deferred adjudication "in light of the fact that this was his first charge for a sexual offense" and "because of the State's questionable proof of the elements." He contends that the trial court's assessment of only eight years' incarceration, which is at the "low end of the available punishment of five years to life," supports his argument. He also argues that "there simply was no sound trial strategy for trial counsel's failure to carefully review these videotapes with [him] before trial."

## APPLICABLE LAW

To prevail on this claim, appellant must show that his lawyer's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App.2003). An ineffective assistance claim must be "firmly founded in the record" and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App.2005).

## STANDARD OF REVIEW

Our review of a lawyer's performance is highly deferential; we begin with the presumption that the lawyer's conduct fell within the wide range of reasonable professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App.2005). Generally, a silent record providing no explanation for the lawyer's action will not overcome this strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110–11.

## DISCUSSION

Appellant did not raise his claim of ineffective assistance of counsel in his motion for new trial and did not develop a record showing why he thought his lawyer was ineffective. Although appellant initially testified at trial that his lawyer never told him about the video recordings, he later clarified this testimony by stating that his lawyer told him about the recordings "[m]ore or less, not very well." Consequently, the record shows that appellant's lawyer did discuss the recordings with appellant. But the record is silent about what was discussed and how the recordings factored into the lawyer's trial strategy or advice to appellant. On this record, we conclude that appellant has not overcome the strong presumption that his lawyer provided effective assistance. We resolve issue two against appellant.

## ASSESSMENT OF FINE

In pronouncing appellant's sentence, the trial court ordered appellant to pay a $4,000 fine, which the court said would be satisfied by "time served and time to be served." However, the judgment reflects that a fine was not ordered. We may modify the judgment when we have the necessary information to do so. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App.1992) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex.App.—Dallas 1991, pet. ref'd)). Consequently, we modify the judgment to reflect the $4,000 fine that was orally pronounced.

## CONCLUSION

We modify the judgment to reflect that the trial court ordered a $4,000 fine as part of appellant's sentence and affirm the trial court's judgment as modified.

Tex.App.-Dallas, 2014

IslasMartinez v. State

--- S.W.3d ----, 2014 WL 6900498 (Tex. App.-Dallas)