**AFFIRMED as MODIFIED; and Opinion Filed December 9, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00953-CR

### LUIS RUBEN ISLASMARTINEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F13-00162-L**

## OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Lang-Miers

Luis Ruben IslasMartinez[1] appeals his conviction for aggravated sexual assault of a child

by contact. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2014). In two

issues, appellant argues that the evidence is insufficient to support the conviction and his trial

lawyer rendered ineffective assistance. We modify the judgment to reflect the pronouncement of

a $4,000 fine and, as modified, affirm the trial court's judgment.

### FACTUAL BACKGROUND

For several months in 2011, appellant and his wife did not live together, and appellant

had custody of his stepdaughter E.R. and E.R.'s five siblings. E.R. was the oldest and was

around twelve or thirteen years of age at the time. For a reason E.R. did not recall, she began

---

[1] In his brief, appellant spells his last name with a space between "Islas" and "Martinez." However, in the indictment and the trial court's judgment, appellant's last name is spelled "IslasMartinez," without a space. We use the spelling that comports with the judgment.

sleeping in appellant's bed "sometimes." She said she considered appellant "like a boyfriend" and thought she was in love with him. She described how she and appellant would lie in the bed with their clothes on and hug, kiss with their tongues, and "hump." She explained that by "hump" she meant appellant would lie on his back on the bed, she would lie on top of him with her legs on either side of appellant, and they would "hump." She did not recall how this conduct started, and she estimated that they engaged in this activity "[t]en or less" times and always wore clothing.

Using diagrams of unclothed children, E.R. circled the parts of her and appellant's bodies that touched when they would "hump." She circled the genital area on both diagrams and referred to the area on the girl diagram as the "vagina." She did not know what the circled area on the boy diagram was called, but she said it was "hard," it felt "good," it rubbed against her "vagina," and it made her "vagina" feel "good." E.R. testified that appellant also rubbed her breast under her shirt when she was sleeping and rubbed her butt under her panties once when they were watching a movie.

Two of E.R.'s younger sisters testified that they saw E.R. and appellant in bed together. Both said E.R. was lying on top of appellant. One sister saw E.R. kiss appellant's cheek. She said she thought this was "normal" behavior at first, but she changed her mind the more she thought about it. She said there were times when appellant would send all the children except E.R. to bed early and then she would hear appellant's bed "squeaking." She testified that she was confused and told Mother about what she saw and heard. The other sister testified that she was sleeping in the bed with appellant and E.R. one night when she awoke because the bed was moving. She pretended to be asleep and saw E.R. on top of appellant. E.R. told appellant to kiss her and appellant said, "Where?" She did not see E.R. moving on top of appellant.

–2–

Mother purchased a clock with a hidden video camera and gave it to one of E.R.'s sisters to place in appellant's home. The sister placed the clock/camera in the living room and facing appellant's bedroom. Mother obtained the recordings and watched them. They showed E.R. and appellant face-to-face in a full frontal embrace, walking around the living room and bedroom areas. E.R. was walking backwards with her feet on top of appellant's feet; appellant was often smoking a cigarette. In one of the recordings they were leaning against a wall in this embrace. In another they were walking into the bedroom and appellant fell backwards onto the bed and E.R. fell on top of him. E.R. stayed on top of appellant for several seconds. Both were fully clothed in the recordings.

When Mother asked E.R. about what had happened with appellant, E.R. said nothing had happened. Mother showed the recordings to the police and a detective interviewed E.R., but E.R. also told the detective that nothing had happened. About a month later, E.R. began to open up to Mother. Mother said E.R. was "a really nervous person" so Mother wrote down several questions to E.R. asking what happened, and E.R. answered the questions in writing. Although some of the questions and answers were difficult to read, we were able to discern several, including the following:

3      have you ever kiss [sic] in the mouth?

3      Yes I kiss hem [sic] in hes [sic] mouth

7      did he touch your breasts?

7      sometimes he will touch my breast when I sleep in his bed and then he will turn away

8      did he touch your vagina?

8      I dont [sic] think so

12      did he ever show you his private parts?

12      NO

did Luis ever told [sic] you not to tell anyone what was happening between you and him?

NO

Although we were unable to read question 10, E.R. answered that question as follows:

10    We dint [sic] not have real sex. he will have his pajamas on when he will get on top of me I will fill [sic] his private part rubbig [sic] against my virgina [sic].

After getting E.R.'s answers, Mother called the detective investigating the case and he interviewed E.R. again. The detective obtained a warrant for appellant's arrest, and the State charged appellant with aggravated sexual assault of a child by sexual-organ-to-sexual-organ contact.

Appellant waived his right to a jury trial and pleaded not guilty before the court. After the State put on the evidence recounted above, appellant testified in his defense and denied any inappropriate behavior with E.R. He denied that he "hump[ed]" E.R., fondled her breast, kissed her with his tongue, and that they were "boyfriend and girlfriend." He admitted that E.R. at times slept in his bed, but he said all his "children were wherever they felt comfortable." He said he had not seen the recordings from the hidden video camera, his lawyer did not show him the recordings, and he was unaware that the recordings showed him and E.R. "walking around hugging from room to room, falling on the bed, [him] smoking a cigarette." When asked whether he thought this behavior was appropriate, he said he and E.R. "were always playing[.]" Later, appellant testified that his lawyer discussed the contents of the recordings with him "[m]ore or less, not very well."

The trial court found appellant guilty and assessed punishment at eight years' confinement and a $4,000 fine. Appellant's motion for new trial was overruled, and this appeal followed.

**Applicable Law**

As alleged in this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the female sexual organ of a child, who was not the spouse of the actor, to contact the sexual organ of the actor and the child is under the age of fourteen. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B). The offense as charged is a first-degree felony carrying a sentence of five to ninety-nine years or life and a fine up to $10,000. *Id*. §§ 12.32, 22.021(e).

**Standard of Review**

In analyzing a claim of insufficient evidence, we view all the evidence and reasonable inferences from the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Wise v. State*, 364 S.W.3d 900, 902 (Tex. Crim. App. 2012). The factfinder resolves all conflicts in the evidence and is the exclusive judge of the credibility of the witnesses and the weight to give their testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

**Discussion**

Appellant first argues that the evidence is insufficient to support his conviction because the "contact" between his sexual organ and E.R.'s female sexual organ was not flesh-to-flesh. The State argues that the statute does not require flesh-to-flesh contact and that courts have construed "contact" in this context to include contact through clothing. We agree with the State.

The statute proscribing aggravated sexual assault of a child by contact does not define the term "contact." *See* TEX. PENAL CODE ANN. § 22.021. Our sister courts have construed "contact" in this context to include contact through clothing.

In *Caldwell v. State*, No. 03-96-00603-CR, 1998 WL 10280 (Tex. App.—Austin Jan. 15, 1998, no pet.) (mem. op., not designated for publication), the Austin Court of Appeals rejected the appellant's argument that sexual-organ-to-sexual-organ contact could not be through clothing. The evidence showed that the appellant got on top of the child, contacted the child's female sexual organ over her underwear with his sexual organ and "started going up and down." *Id*. at *1–2. The court said, "'Contact' may be defined as 'touching.'" *Id*. at *2. "Proof of an act of sexual contact or touching need not be shown by flesh-to-flesh contact. If intentionally or knowingly done, sexual contact or touching may be through clothing." *Id*. To support its conclusion the court relied on opinions from the Texas Court of Criminal Appeals construing the terms "contact" and "sexual contact" in other sexual-offense contexts to include contact or touching through clothing. *Id*. at *2 (citing *Resnick v. State*, 574 S.W.2d 558, 559–60 (Tex. Crim. App. [Panel Op.] 1978), and *Miles v. State*, 247 S.W.2d 898, 189–90 (Tex. Crim. App. 1952)).

In *Miles*, the court of criminal appeals construed the meaning of the word "contact" in the context of the offense of "indecent handling of a minor's sexual parts." 247 S.W.2d at 189–90. The appellant argued that his bare hand never touched the child's bare sexual organ and, as a result, the evidence was insufficient to support the conviction. *Id.* at 189. The court rejected that argument reasoning that "nothing in the statute suggest[ed] that the crime there denounced could be committed only by the application of the bare hand of the accused to the bare or naked sexual part of the child." *Id*. at 189–90. The court said, "under the guise of statutory construction, [we] cannot write into the statute that which obviously is not contained there." *Id*. at 190.

And when faced with a similar argument in a public-lewdness context, the court again construed "contact" to include contact through clothing. *Resnick*, 574 S.W.2d at 559–60. The court cited the dictionary definition of "touch" and stated:

This definition makes it quite plain that the essence of the act of touching is to perceive by the sense of feeling. It is a matter of the commonest knowledge that the interposition of a layer of fabric between a person's hand and an object upon which the hand is placed will not prevent that person from feeling the object thus concealed. Were we to accept appellant's contention that he did not "touch" the officer's genitals because no flesh-to-flesh contact was made, absurd results would follow. Under such an analysis, a defendant who thrust his hand beneath a victim's undergarments and fondled his or her genitals in a public place could not be prosecuted for public lewdness if he were wearing a glove.

*Id.* at 560.

The Tyler Court of Appeals also has construed "contact" in the context of aggravated sexual assault of a child to include contact through clothing. In *Cagle v. State*, 976 S.W.2d 879, 882 (Tex. App.—Tyler 1998, no pet.), the appellant argued there was no flesh-to-flesh contact and the evidence was insufficient to support the conviction. The court gave the term "contact" "its ordinary meaning according to its common usage," stating "contact" means "'the act of touching or meeting' and 'close juxtaposition or touching of the bodies or person.' WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, unabridged, 2nd Ed." *Id.* The court concluded "that even assuming there was fabric between [the a]ppellant's penis and [the child's] anus, contact could have occurred." *Id.*

And the Houston First District Court of Appeals reached a similar result in *Jones v. State*, Nos. 01-98-01400-CR & 01-00-00489-CR, 2000 WL 675714 (Tex. App.—Houston [1st Dist.] May 25, 2000, pet. ref'd) (mem. op., not designated for publication), where the evidence showed that the appellant contacted the child's anus with his sexual organ through the child's boxer shorts. The court cited the *Cagle* opinion. *Id.* at *2. It also relied on the court of criminal appeals's decision in *Resnick*. *Id.* The court said "the same analysis [that the court in *Resnick* applied in the context of public lewdness] applies to 'contact' as it applies to aggravated sexual assault. There is no reason to apply a different meaning in the context of aggravated sexual assault." *Id.*

In this case, appellant argues that the cases discussed above were decided before legislative amendments to the definition of "sexual contact" in 2001 and, as a result, no longer apply. We disagree. In 2001, the legislature amended the definition of "sexual contact" for indecency with a child to include touching through clothing. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 739, § 2, sec. (c), 2001 Tex. Gen. Laws 1463, 1463 (current version at TEX. PENAL CODE ANN. § 21.11(c) (West 2011)). But indecency with a child is a different offense, and the legislature did not amend the statute for aggravated sexual assault of a child. The term "contact" was not statutorily defined before 2001, and it remains statutorily undefined. *See* TEX. PENAL CODE ANN. § 22.021. Consequently, we presume the legislature knew the construction that courts had given to the term when it chose not to define it. *See Miller v. State*, 33 S.W.3d 257, 260–61 (Tex. Crim. App. 2000); *Williams v. State*, No. 05-03-00648-CR, 2004 WL 95204, at *2 (Tex. App.—Dallas Jan. 21, 2004, no pet.) (mem. op, not designated for publication) (rejecting argument that change to definition of "sexual contact" for indecency with a child impacted definition of "sexual contact" for public lewdness). And we presume the legislature intended the same construction to continue to be applied after the 2001 amendments. *See Miller*, 33 S.W.3d at 260–61; *Williams*, 2004 WL 95204, at *2.

In the context of aggravated sexual assault of a child by penetration, this Court and other courts have said that penetration may occur through clothing. *See, e.g.*, *Flores v. State*, No. 13-12-00362-CR, 2013 WL 3326982, at *3 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op., not designated for publication); *Villanueva v. State*, No. 04-07-00599-CR, 2008 WL 3057289, at *7–8 (Tex. App.—San Antonio Aug. 6, 2008, no pet.) (mem. op., not designated for publication); *Limon v. State*, Nos. 05-98-01432-CR, 05-98-01433-CR, 05-98-01434-CR, 05-98-01435-CR, 2000 WL 1176591, at *4 (Tex. App.—Dallas Aug. 21, 2000, no pet.) (mem. op., not designated for publication); *Belasco v. State*, No. 01-97-00666-CR, 1999 WL 430802, at *2

(Tex. App.—Houston [1st Dist.] June 10, 1999, pet. ref'd) (mem. op., not designated for publication); *Rodda v. State*, 926 S.W.2d 375, 378 (Tex. App.—Fort Worth 1996, pet. ref'd). In those cases, the courts recognized that "[t]he offensive act is the penetration of the female sexual organ . . . . It does not matter whether [the defendant's] hand was encased in a glove or between her panties and her shorts or outside her shorts so long as his hand accomplished the penetration." *Rodda*, 926 S.W.2d at 378. Here, the offensive conduct is the sexual-organ-to-sexual-organ contact with a child under the age of fourteen. *See* TEX. PENAL CODE ANN. § 22.021; *Jones*, 2000 WL 675714, at *2; *Cagle*, 976 S.W.2d at 882; *Caldwell*, 1998 WL 10280, at *2. It does not matter that the contact occurred through clothing—it is the deliberate and sexual nature of the act that is offensive. Appellant's construction that "contact" in this context must be flesh-to-flesh would lead to the absurd result that an actor could never be prosecuted for aggravated sexual assault of a child if the actor contacted a child's bare female sexual organ with his sexual organ while wearing a condom. *See Resnick*, 574 S.W.2d at 560. Under the guise of statutory construction, we will not write into a statute language that is not there. *See Miles*, 247 S.W.2d at 190. As other courts have done, we reject the argument that "contact" must be flesh-to-flesh and conclude that in the context of aggravated sexual assault of a child, contact may occur through clothing.

Appellant next argues that the evidence is insufficient because "the evidence shows that the complainant falsely accused [him] in this case and that he did not commit any offense." Appellant argues that no one saw any "sex act," some of the evidence was conflicting, and E.R. was not credible.

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013). E.R. testified that she and appellant "hump[ed]" through clothing on multiple occasions. She

–9–

identified the areas of their respective bodies that touched during these acts as her "vagina" and appellant's genital area. She described how appellant's genital area felt "hard" and made her "vagina" feel "good." And she testified that she was twelve or thirteen years of age at the time. In addition to E.R.'s testimony, the court heard testimony from Mother and E.R.'s siblings, and watched recordings of appellant and E.R. walking around in a full frontal embrace and falling on the bed with E.R. on top of appellant. The factfinder resolved credibility issues and conflicts in the evidence against appellant, which it had the exclusive province to do. *See Wesbrook*, 29 S.W.3d at 111. We conclude that the State proved beyond a reasonable doubt that appellant committed aggravated sexual assault of a child as alleged in the indictment. We resolve issue one against appellant.

INEFFECTIVE ASSISTANCE OF COUNSEL

In issue two, appellant argues that his lawyer rendered ineffective assistance because his lawyer did not tell him about the video recordings. Appellant argues that if his lawyer had told him about the recordings, he "may well have decided to plead no contest or even guilty." He also argues that the trial court may have granted him deferred adjudication "in light of the fact that this was his first charge for a sexual offense" and "because of the State's questionable proof of the elements." He contends that the trial court's assessment of only eight years' incarceration, which is at the "low end of the available punishment of five years to life," supports his argument. He also argues that "there simply was no sound trial strategy for trial counsel's failure to carefully review these videotapes with [him] before trial."

**Applicable Law**

To prevail on this claim, appellant must show that his lawyer's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *Rylander v. State*, 101

S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance claim must be "firmly founded in the record" and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

**Standard of Review**

Our review of a lawyer's performance is highly deferential; we begin with the presumption that the lawyer's conduct fell within the wide range of reasonable professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Generally, a silent record providing no explanation for the lawyer's action will not overcome this strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110–11.

**Discussion**

Appellant did not raise his claim of ineffective assistance of counsel in his motion for new trial and did not develop a record showing why he thought his lawyer was ineffective. Although appellant initially testified at trial that his lawyer never told him about the video recordings, he later clarified this testimony by stating that his lawyer told him about the recordings "[m]ore or less, not very well." Consequently, the record shows that appellant's lawyer did discuss the recordings with appellant. But the record is silent about what was discussed and how the recordings factored into the lawyer's trial strategy or advice to appellant. On this record, we conclude that appellant has not overcome the strong presumption that his lawyer provided effective assistance. We resolve issue two against appellant.

**ASSESSMENT OF FINE**

In pronouncing appellant's sentence, the trial court ordered appellant to pay a $4,000 fine, which the court said would be satisfied by "time served and time to be served." However, the judgment reflects that a fine was not ordered. We may modify the judgment when we have the necessary information to do so. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App.

–11–

1992) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)). Consequently, we modify the judgment to reflect the $4,000 fine that was orally pronounced.

## CONCLUSION

We modify the judgment to reflect that the trial court ordered a $4,000 fine as part of appellant's sentence and affirm the trial court's judgment as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Publish
TEX. R. APP. P. 47.2(b)

130953F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LUIS RUBEN ISLASMARTINEZ,
Appellant

No. 05-13-00953-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F13-00162-L.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect the pronouncement of a $4,000 fine.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 9th day of December, 2014.