

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00084-CR
07-18-00085-CR
07-18-00086-CR
07-18-00087-CR
07-18-00088-CR
07-18-00089-CR
07-18-00090-CR
07-18-00091-CR
07-18-00092-CR
07-18-00093-CR
07-18-00094-CR

RITO GREGORY LOPEZ JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Moore County, Texas
Trial Court Nos. 5465 (Counts I -XI), Honorable Ron Enns, Presiding

November 20, 2018

## OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Rito Gregory Lopez Jr., appeals his eleven convictions for sexual assault and the eleven 25-year prison sentences levied for each. Through two issues, he

questions the applicability of the enhancement allegation within the indictment and the sufficiency of the evidence underlying his convictions. We reverse in part and affirm in part.

*Issue One – Enhancement Allegation*

The indictment at bar was filed by the State on January 5, 2017. The eleven counts alleged therein against appellant generally read as follows:

> on or about the . . . day of . . . A.D. . . . and before the presentment of this indictment, in the County and State aforesaid, did then and there, intentionally or knowingly cause the penetration of the sexual organ of [Laura], a child who was then and there younger than 17 years of age and ***a person whom the defendant was prohibited from marrying or purporting to marry or with whom the defendant was prohibited from living under the appearance of being married under Section 25.01, Penal Code***, by [appellant]'s finger[.]

(Emphasis added).[1]

Below, appellant argued that the portion of the count we italicized should be quashed because it denied him equal protection. Now he tells us that "Appellant's argument is not based in the Equal Protection Clause, rather in that the application of the enhancement was contrary to law both at the time of trial and at the time of appeal." And, it was so contrary, in his view because the "legislature intended for §22.011(f) to be used as an 'enhanced punishment for sexual assault committed in the course of a bigamous relationship,' rather than as an attempt to punish offenders who were married at the time of their offense." Furthermore, "[i]n this case, Appellant did not claim to be married to The Complaining Witness." So, in his view, "the trial court erred by permitting the case to continue under the enhanced indictment." When asked at oral argument to clarify his contention, he mentioned a twofold position. Apparently, he wanted us to say that the

---

[1] We assigned the name "Laura" to the victim of appellant's conduct for purposes of this opinion.

trial court should have granted his pretrial motion to quash because the State was not going to prove he and the victim were involved in a bigamous relationship. So too did he want us to reverse the convictions and acquit him because the evidence tendered at trial failed to illustrate, beyond reasonable doubt, that he and the victim had a bigamous relationship. Because the latter argument would afford him the greatest relief, we consider it first. *See Ex parte Reyes*, 474 S.W.3d 677, 681 (Tex. Crim. App. 2015).

Appellant was charged under § 22.011(a)(2)(A) of the Texas Penal Code. Through that statute, the legislature made it a crime if a person intentionally or knowingly causes the penetration of the sexual organ of a child by any means. TEX. PENAL CODE ANN. § 2.011(a)(2)(A) (West Supp. 2018). Furthermore, the crime normally is a "felony of the second degree" but rises to the level of a "felony of the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01." *Id.* § 22.011(f). Needless to say, the meaning of § 22.011(f) has been the subject of much debate. That debate revolved around whether it required the State to prove bigamy under § 25.01 or simply that the accused could not have married the victim because he was already married.[2] Various earlier opinions by the Texas Court of Criminal Appeals, such as *Arteaga v. State*, 521 S.W.3d 329 (Tex. Crim. App. 2017), did not necessarily resolve the matter.

---

[2] Per § 25.01 of the Texas Penal Code, one commits bigamy if 1) he is legally married and (A) purports to marry or does marry a person other than his spouse in this state, or (B) lives with a person other than his spouse under the appearance of being married; or 2) he knows that a married person other than his spouse is married and he (A) purports to marry or does marry that person, or (B) lives with that person in this state under the appearance of being married. TEX. PENAL CODE ANN. § 25.01(a)(1), (2) (West Supp. 2018).

Indeed, in the *Arteaga* opinion, the court said "[w]e . . . conclude that the State is required ***to prove facts constituting bigamy*** under all three provisions of 22.011(f), that is, when the defendant was prohibited from (1) marrying the victim or (2) claiming to marry the victim, and when the defendant was prohibited from (3) living with the victim under the appearance of being married." *Id.* at 335 (emphasis added). That statement would lead one to think that proving bigamy was a requirement. Yet, the words of footnote 9 suggested otherwise. The court told us in the footnote that "[w]hen we discuss 'facts that would constitute bigamy,' we do not mean that the State has to prove . . . the defendant committed the offenses of sexual assault and bigamy." *Id.* at 335 n.9. "What we mean is that, to elevate second-degree felony sexual assault to first-degree felony sexual assault under Section 22.011(f), the State must prove . . . the defendant committed sexual assault and that, if he were to marry or claim to marry his victim, or to live with the victim under the appearance of being married, then he *would* be guilty of bigamy." *Id.* One could interpret the wording of this footnote as meaning that all the State need do is establish the accused's marital status, and if married, then the requirements of § 22.011(f) would be met, irrespective of whether the accused ever even thought about marrying the victim. A most recent iteration of *Arteaga*, though, seems to have resolved the quandary.

In *State v. Senn*, No. PD-0145-17, 2017 Tex. Crim. App. Unpub. LEXIS 899 (Tex. Crim. App. Nov. 22, 2017) (per curiam) (*Senn II*), the appellant had been convicted of sexual assault and sentenced to imprisonment for life. Via an appeal to the Fort Worth Court of Appeals in *Senn v. State*, 551 S.W.3d 172 (Tex. App.—Fort Worth), *vacated*, 2017 Tex. Crim. App. Unpub. LEXIS 899 (*Senn II*), the appellant argued that 1) the evidence was insufficient to support enhancement of his sentence under § 22.011(f)

4

because the provision obligated the State to prove bigamous conduct and it had not done so, and 2) the jury charge should have included an instruction requiring proof of bigamy. *Id.* at 175. The intermediate court rejected both contentions. *Id.* The Court of Criminal Appeals vacated and remanded the cause back to the intermediate court. In doing so, it alluded to *Arteaga* in the following regard. First, the court observed that it had in *Arteaga* "held that under § 22.011(f), the Legislature 'intended for the State to prove facts constituting bigamy.'" *Senn II*, 2017 Tex. Crim. App. Unpub. LEXIS 899, at *1. Second, it said the *Arteaga* court also "held that the jury charge in that case was erroneous because it neglected to include the definition of bigamy from § 25.01." *Id.* The intermediate court was told to reconsider its decision "in light of our opinion in *Arteaga.*" *Id.*

Heeding the directive of the Court of Criminal Appeals, the Fort Worth Court of Appeals held on remand that: "[a]fter applying *Arteaga*'s holding—that '[t]he legislature intended for the State to prove facts constituting bigamy whenever it alleges that the defendant committed sexual assault, *and* the State invokes [s]ection 22.011(f)'—to the facts here, we hold that the evidence is insufficient to trigger the statutory enhancement of Senn's sexual assault charge." *Senn v. State*, __ S.W.3d __, __, 2018 Tex. App. LEXIS 8722, at *3-4 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (op. on remand and on reh'g) (*Senn III*). It so held after noting the irreconcilability between footnote 9 of the *Arteaga* opinion with statements in the opinion's body. *Id.*, 2018 Tex. App. LEXIS 8722, at *9-10. A way to resolve that irreconcilability came in the form of a prior directive from the Court of Criminal Appeals. The directive in question is that instructing us of the non-precedential value afforded footnotes and concurring opinions. *Id.* at *11-12; *accord Gonzales v.*

*State*, 435 S.W.3d 801, 813 n.11 (Tex. Crim. App. 2014) (stating that "[w]e agree that we have intimated that we are not bound by holdings expressed in the footnotes of our own opinions"); *Young v. State*, 826 S.W.2d 141, 144 n.5 (Tex. Crim. App. 1991) (again stating that footnotes should receive minimal precedential value). Abiding by that directive, the court then held "the State was required to prove facts constituting bigamy to enhance Senn's second-degree felony sexual assault to first-degree felony sexual assault." *Senn III*, 2018 Tex. App. LEXIS 8722, at *13-14. In other words, "to trigger the enhancement under section 22.011(f), the State was required to prove facts constituting a sexual assault and facts constituting one of the six bigamy prohibitions listed in section 25.01." *Id.* at *14. Furthermore, the State's evidence of Senn having been married at the time of the assault (as reflected by a marriage license) was insufficient to satisfy that burden. This was so because there was "no evidence that Senn took, attempted, or intended to take any action involving marrying or claiming to marry [the victim] or living with [the victim] under the appearance of being married." *Id.* "Evidence of the sexual assault and of Senn's marriage . . . to [the victim]'s step-mother, standing alone [did] not amount to facts constituting one of the six bigamy prohibitions under section 25.01." *Id.* at *14-15.

The opinion in *Senn III* was not without a dissent. Justice Gabriel also noted the inconsistency within *Arteaga* but nonetheless concluded that the concurring opinion of Judge Yeary in *Arteaga* resolved the conflict. His view, according to the dissent's opinion, was that footnote 9 clarified that the facts need only show bigamy would have been committed if the perpetrator were to marry the victim. *Id.* at *21 (dissenting opinion). So, Justice Gabriel concluded that "the State was required to proffer sufficient evidence that *if* Senn had married or held himself out to be married to his daughter, he *would* have

6

committed bigamy." *Id.* at *22. Furthermore, in Justice Gabriel's view, the State satisfied that burden by showing Senn was married when he assaulted his victim. *Id.*

The words of our English language have relatively clear meaning. Yet, their juxtaposition with each other in the form of sentences and paragraphs can lead to confusion. This harkens to an admonishment by the late John Wayne: "[i]f everything isn't black and white, I say, 'why the hell not?'" In an attempt to make more black and white the words of *Arteaga*, we note that in remanding the appeal to the Fort Worth intermediate appellate court, the Court of Criminal Appeals only quoted the passage in *Arteaga* saying that the legislature "'intended for the State to prove facts constituting bigamy.'" *Senn II*, 2017 Tex. Crim. App. Unpub. LEXIS 899, at *1 (quoting *Arteaga*, 521 S.W.3d at 336). It neither quoted nor reminded its readers of the content in footnote 9. More importantly, we are bound by the purported intent of the Texas Legislature when interpreting a statute. *See Ivey v. State*, 277 S.W.3d 43, 51-52 (Tex. Crim. App. 2009). If that body "'intended for the State to prove facts constituting bigamy,'" as determined by the Court of Criminal Appeals in *Senn II,* then we deem the path struck by the majority in *Senn III* the appropriate one to follow here.

Section 22.011(f) obligates the State to prove facts constituting bigamy, as that term appears in § 25.01. Merely proving that the accused was married when the assault happened is not enough. "[T]o trigger the enhancement under section 22.011(f), the State [is] required to prove facts constituting a sexual assault and facts constituting one of the six bigamy prohibitions listed in section 25.01." *Senn III,* 2018 Tex. App. LEXIS 8722, at *14. And, in applying that standard here, we find the evidence deficient.

Appellant was married when the assaults occurred. However, we find no evidence of record from which a rational fact-finder could reasonably conclude that he 1) purported to marry or married the victim, 2) lived with the victim under the appearance of being married, or 3) knew that the victim was married and purported to marry the victim or live with her as if married. So, the prerequisite to enhancing appellant's crimes from second- to first-degree felonies was not satisfied. This means that the cause must be remanded for a new trial on punishment if the evidence is otherwise sufficient to prove that he committed the underlying offense of sexual assault. *See id.* at \*16-17 (wherein the court modified the trial court's judgment to reflect that Senn committed a second-degree felony, reversed the trial court's judgment as to the punishment assessed, and remanded the cause for a new trial on punishment).[3] It also means that appellant's contentions regarding the denial of his motion to quash are moot.

*Issue Two – Sufficiency of the Evidence to Support the Convictions*

We now address the sufficiency of the evidence underlying appellant's multiple convictions for sexual assault. Appellant believes that the convictions are reversible since the State failed to prove not only that he assaulted Laura in the manner alleged in the indictment, but also that he assaulted her on the dates mentioned in the instrument. We disagree.

---

[3] Appellant suggested at oral argument that *Arteaga* required an acquittal if the State failed to prove facts constituting bigamy. We disagree. The passage to which counsel referred in making the argument was taken out of context. The *Arteago* court did say that "[t]he legislature intended for the State to prove facts constituting bigamy whenever it alleges that the defendant committed sexual assault, *and* the State invokes Section 22.011(f)." *Arteaga*, 521 S.W.3d at 336. Yet, it did so **after** describing the actual issue being addressed. As it said, "[t]he issue here is what does the State have to prove when it invokes Section 22.011(f) of the sexual-assault statute, which incorporates the bigamy statute, to elevate sexual assault from a second-degree felony to a first-degree felony." *Id.* at 335. The court was talking about the prerequisites to enhancement as opposed to conviction. Thus, its discussion was unrelated to the elements of sexual assault and what had to be established to prove an accused committed that crime.

8

As previously indicated, an eleven-count indictment was in play here. The allegations within each count were the same except for the dates upon which the assaults purportedly occurred. Count One encompassed the accusation that appellant digitally penetrated Laura's "sexual organ" "on or about" October 17, 2015. The dates alleged in the other ten counts were 1) November 14, 2015; 2) December 12, 2015; 3) January 16, 2016; 4) February 20, 2016; 5) March 19, 2016; 6) April 16, 2016; 7) May 21, 2016; 8) June 18, 2016; 9) July 16, 2016; and 10) August 13, 2016, respectively. Furthermore, preceding each date was the phrase "on or about." The latter phrase means any time before the presentment of the indictment and within the statute of limitations for the offense charged. *McKinney v. State*, No. 05-14-01350-CR, 2016 Tex. App. LEXIS 7642, at *27 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication). More importantly, it allows the State to prove a date other than the one alleged in the charging instrument, as long as that date is before the indictment issued and within the statutory period of limitations. *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000); *Eggert v. State*, No. 07-08-00495-CR, 2010 Tex. App. LEXIS 309, at *8 n.1 (Tex. App.—Amarillo Jan. 14, 2010, pet. ref'd) (mem. op., not designated for publication). In other words, alleging that an offense occurred on or about a particular date puts the accused on notice to prepare for proof that the offense happened at any time within the statutory period of limitations. *Borden v. State*, No. 10-14-00117-CR, 2016 Tex. App. LEXIS 627, at *12 (Tex. App.—Waco Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication); *Wisdom v. State*, No. 06-14-00200-CR, 2015 Tex. App. LEXIS 5800, at *5-6 (Tex. App.—Texarkana June 10, 2015, no pet.) (mem. op., not designated for publication). Given this, it does not matter, at bar, that the State may have

failed to prove that each alleged assault occurred on the specific date mentioned in the respective count. It need only prove that it occurred before the indictment issued and within the period of limitations. We now turn to those matters.

Again, appellant was charged under § 22.011(a)(2)(A) of the Texas Penal Code. As previously mentioned, the statute provides that one commits an offense if he or she intentionally or knowingly causes the penetration of the sexual organ of a child by any means. TEX. PENAL CODE ANN. § 22.011(a)(2)(A). Being a felony named within article 12.01(1) of the Texas Code of Criminal Procedure, an assault under § 22.011(a)(2) assault has no limitations period. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B) (West Supp. 2018) (stating that "felony indictments may be presented within these limits, and not afterward: (1) no limitation . . . sexual assault under Section 22.011(a)(2)"). Consequently, the State had no limitations period within which to prosecute the sexual assaults mentioned within the indictment at bar. So long as the assaults occurred before the indictment was filed it matters not whether they happened on dates other than those expressed in the indictment.

Next, within that record at bar is evidence illustrating that: 1) Laura was born in 2001; 2) appellant first touched her "vagina" in October of 2015; 3) appellant was her stepfather at the time; 4) the initial touching of her "vagina" occurred over her clothes; 5) the initial touching did not result in the penetration of the "vagina"; 6) appellant also touched Laura's "vagina" over her clothes in November and December of 2015; 7) not until January of 2016 did appellant place his hand under her garments and actually penetrate her "vagina" with his fingers; 8) appellant eventually penetrated Laura's "vagina" seven times between January of 2016 and September of 2016; and 9) in all,

according to Laura, he touched her "vagina" 15 times during the period between October of 2015 and September of 2016.

Other evidence appears of record that must be taken into consideration. It supplies the framework within which to place Laura's testimony about the vaginal touching and penetration. It begins with defense counsel talking with her about the "female anatomy." Counsel asked: "You understand that there is like a flap on the outside, correct," to which she answered "yes." Counsel then said: "Okay. That's called the labia majora and that's the big thick stuff on the outside. And then there's also another flap on the inside, correct" Laura replied: "yeah." That led to the following: "And then there's a hole inside of that and that's your vagina. Do you understand that?" There came what could be consider the affirmative reply of "Uh-huh." Another "uh-huh" accompanied the following from counsel: "So, just because someone touches the outside of your labia, that's still private and it's still not okay to touch, but that doesn't necessarily mean that it's penetrating your vagina. Your vagina is actually the hole inside. Okay?" We end our allusion to the dialogue with counsel first asking if it was "still your testimony that he put his finger inside your vagina or did he just touch the outside of your labia" and Laura then answered "[i]t's still my testimony that he touched inside my vagina."

We next observed that penetration of the sexual organ is not limited to penetrating the vagina. As recognized by our Court of Criminal Appeals, a woman's "sexual organ" is somewhat layered. It at least consists of the labia majora (i.e., the outside flap alluded to at bar), the labia minora (i.e., the inside flap alluded to at bar), the mons veneris, the clitoris, perineum, the entrance to the vagina, and vagina. *See Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (wherein the court approved of the instruction

11

that "'female sexual organ' means the entire female genitalia, including both vagina and the vulva. Vulva is defined as the external parts of the female sexual organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance to the vagina"). Furthermore, "[t]ouching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute." *Id.* (approving that instruction as well).

Logically then, penetrating the vagina requires one to first pass through both labia, and in passing through or penetrating both labia, one has already penetrated the sexual organ before arriving at the vagina. *Id.* Thus, when Laura testified that appellant touched her "vagina" 15 different times, a fact-finder could reasonably interpret that to mean appellant penetrated both labia and, therefore, her sexual organ 15 different times between October of 2015 to September of 2016. Indeed, testimony from the SANE nurse confirmed this when she said: "if you touch the female sexual organ, you're going to cause penetration because penetration is anything that goes past those fat outer lips which are called the labia majora which is a barrier but also part of the female sexual organ."

These 15 instances of contacting the vagina is evidence upon which a rational fact-finder could conclude beyond reasonable doubt that appellant sexually assaulted his victim at least eleven times as alleged in the indictment. That he touched her vagina through her clothes in several instances is inconsequential. The statute does not state that the sexual organ need be unclothed or bare when penetration occurs; it may well happen through clothing. *See Islasmartinez v. State*, 452 S.W.3d 874, 879 (Tex. App.—Dallas 2014, pet. ref'd) (so acknowledging); *Flores v. State*, No. 13-12-00362-CR, 2013 Tex. App. LEXIS 7829, at *8 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem.

12

op., not designated for publication) (noting that "contact outside of the victim's underwear can constitute penetration").

Nor is it of consequence that the penetration may have occurred on dates other than those named in the indictment. Again, the State need only have shown that it happened before the indictment issued and within the limitations period, and it did that. Once they began, the assaults underlying the eleven convictions were shown to at least have occurred each month; the first in October of 2015 and the last in August of 2016.

Admittedly, much of the victim's testimony may have resulted from leading questions asked by the State. So too it may have been somewhat contradictory and vague at times. Yet, under the applicable standard of review, the evidence must be viewed in a light most favorable to the verdict. *Islasmartinez*, 452 S.W.3d at 877. Furthermore, the fact-finder has the right and obligation to resolve all conflicts within the evidence and questions regarding the credibility of witnesses. *Id.* Our obligation is to defer to the choices it made. *Barringer v. State*, No. 07-16-00068-CR, 2017 Tex. App. LEXIS 9327, at *11 (Tex. App.—Amarillo Oct. 23, 2017, no pet. (mem. op., not designated for publication) And, so long as the evidence was of sufficient quantum to allow that fact-finder to find the essential elements of the offense beyond reasonable doubt, its verdict has the support of legally sufficient evidence. *See Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015) (stating that in both jury and bench trials, the reviewing court must view the evidence in the light most favorable to the verdict in order to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt). Obviously, the fact-finder found Laura credible and opted

13

to accept her testimony about the manner, frequency, and timing of the assaults.  We defer to those decisions.

In short, the evidence of record is sufficient to support appellant's eleven convictions for sexual assault under § 22.011(a)(2) of the Texas Penal Code.  However, it is not sufficient to satisfy the elements of § 22.011(f).  Consequently, the range of punishment was that applicable to a felony of the second degree, i.e., imprisonment for no longer than 20 years or less than 2.  TEX. PENAL CODE ANN. § 12.33(a) (West 2011).  The multiple 25-year sentences levied by the trial court exceeded that range.  Thus, punishment must be considered anew.

We affirm appellant's convictions for sexual assault, reverse the judgments to the extent they reflect a 25-year prison sentence per offense, and remand each cause to the trial court for a new punishment hearing.

Brian Quinn
Chief Justice

Publish.

14