

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00116-CR

_____

NATHANIEL BOYD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F18-3034-367

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## Introduction

The trial court convicted appellant Nathaniel Markell Boyd of three counts of aggravated sexual assault and two counts of indecency with a child and sentenced him to 40 years in prison on each count of sexual assault and 10 and 5 years in prison on the indecency counts. On appeal, Boyd complains that the evidence was insufficient on all counts and his sentences were disproportionate. Because the evidence was sufficient to uphold his convictions and because Boyd failed to preserve his sentencing issue, we affirm the trial court's judgment.

## Factual Background

### 1. Boyd moves in with A.R. and her mother

In January 2018, Boyd moved into his then-girlfriend's apartment with her daughter, A.R., who was eleven years old. The apartment had two bedrooms and one bathroom; A.R. had a bedroom to herself. Boyd and A.R.'s mother worked together at a local warehouse and their relationship soon turned sour. Boyd and A.R. also had a difficult relationship, and she openly disliked like him. Boyd and A.R's mother decided to end the relationship, but before he could officially move out, Boyd was arrested in April 2018 on an out-of-state warrant and spent several weeks in jail. Upon his release in early May that same year, A.R.'s mother allowed Boyd to temporarily return to the apartment while he looked for alternative housing.

## 2. A.R.'s allegations

One Saturday in May, Boyd and A.R. were alone in the apartment while A.R.'s mother was at work. A.R. testified that she awoke that morning, and Boyd told her to do the dishes as instructed by her mother, but she just "looked at him crazy." Later in the day, as they both sat at a table in the apartment, Boyd told her "very inappropriate stories" about an ex-girlfriend's daughter who "had big boobs and [a] big butt and stuff" and who had been molested by another boyfriend. A.R. explained that Boyd also stated that he knew she was not wearing any underwear under her clothes, which made her uncomfortable.

At some point they moved to the living room and sat on separate couches, and A.R. stated that Boyd asked her to access pornography on the television using an internet browser. Specifically, Boyd instructed her to search for videos using the words "[s]tepdad and stepdaughter, black." According to A.R., this search returned a video of a stepdad and stepdaughter having intercourse. While the video played, Boyd played with his "private area"[1] by moving his hands up and down. A.R. stated that she saw his "private part" and that it was "black." Boyd then told her "to come over there and bounce on it," but she refused.

A.R. explained that Boyd told her he was going to take a shower but never did. She then moved to a different couch in the living room and started looking at the

---

[1]A.R. defined "private area" as the body part used by boys to "pee."

Facebook profile of another man on one of her mother's phones. Boyd sat on the living room floor in view of the phone and stated that his "stuff [was] bigger than that" and again showed A.R. his "private part." A.R. testified that she went to her bedroom and lay on her bed. Boyd then entered her bedroom and lay down behind her under the covers facing the back of her head. A.R. then felt Boyd's "private area" rubbing against both her "butt" and "googoo"[2] through her clothing. A.R. said this felt "very [i]nappropriate" and "scary."

A.R. said Boyd then exited her bedroom but instructed her to remove her pants and say, toward the door, "I'm ready." A.R. removed her pants and underwear and Boyd re-entered the room wearing only a white shirt; she could see his "boy private part." According to A.R., they lay back down on the bed in the same position, with Boyd behind her again rubbing his "stuff" against her "googoo" and "booty." A.R. said this time she felt "something else . . . very painful" on her "googoo." She testified that his "private part" touched her "booty hole" and the outside of her "googoo." She thought he tried to put his penis inside where she pees but did not know for sure because she was not "looking down there." She reiterated that it hurt when Boyd did this.

According to A.R., Boyd then licked the inside of her "googoo" while she lay on the bed on her back. To A.R., this felt "[v]ery uncomfortable" and "[v]ery

---

[2]A.R. indicated that she refers to her private area used to poop as the "butt" and her area used to pee as the "googoo."

inappropriate." She stated that, after Boyd finished licking her "googoo," she thought it felt "dry." Boyd then lay beside A.R. and started "jerking off" by moving his hands up and down on his "private parts." A.R. said that Boyd stayed in the room after this to "clean up his mess" with a white towel. She figured that he was cleaning up "sperm" because something white had come out. A.R. testified that Boyd did not touch her "googoo" with his hand or fingers.

Using her cell phone, A.R. then contacted her mother and brother to tell them what Boyd had done to her. She said that Boyd begged her not to tell anyone and then grabbed her phone. In response, A.R. took a knife from the kitchen drawer, pointed it at Boyd, and demanded that he give her the phone back. Boyd complied, and A.R. ran barefoot from the apartment, where she soon encountered a mailman who stayed with her while she called 9-1-1.

### 3. The investigation; evidence at trial

Upon observing A.R. soon after these events, A.R.'s mother and the responding officer described her demeanor as "hysterical," "crying really bad," and "terrified."

A.R. was examined by a sexual-assault nurse examiner less than three hours after the alleged events; the examination included the taking of DNA swabs from A.R.'s mouth, vagina, and anus. A.R. recounted to the examiner that Boyd had "humped [her]"; exposed his "private part" to her; "started putting his private part, penis, in [her] googoo"; "put his mouth with his tongue on [her] private part"; and

5

"touched [her] with his hand on [her] private." Also, while the pornography was playing in the living room, Boyd had said to A.R.: "[D]o you want to touch it? Don't be scared." The examiner did not observe any injuries to A.R.'s vagina or anus and testified that it would have been uncommon to find such injuries.

A.R. was forensically interviewed three days after the alleged events. The interviewer testified that A.R. was "shaky" and "nervous" at the interview. She also recalled that A.R. had provided ample sensory details about the events, which lent credibility to A.R.'s account and that she had no concerns that A.R. had been coached about what to say at the interview.

The State's DNA experts testified that no male DNA was recovered from A.R.'s oral swab. But, using multiple testing methods, they were able to conclude from A.R.'s anal and vaginal swabs that (1) both swabs contained male DNA; (2) the DNA from the anal swab was "164 quadrillion times more likely" to be from A.R. and Boyd than A.R. and another unknown person; (3) the male DNA obtained from the vaginal swab provided only a partial DNA profile but was from a single male source; (4) the partial DNA profile obtained from the vaginal swab was consistent with that of Boyd's DNA profile; and (5) Boyd could not be excluded as the contributor of the DNA from the vaginal swab.

The parties agreed to admit recordings of the 9-1-1 call and forensic interview along with copies of various police reports into evidence. In the 9-1-1 call, A.R. told the dispatcher that Boyd had touched her vagina with his hand. At the forensic

6

interview, A.R. detailed that Boyd had tried to put his "private" into both her "butt" and "private," and that he also licked inside her "private part." A.R. reported to a responding police officer that Boyd had touched her vagina with his hand and "attempted to penetrate her vagina with his penis." Additionally, an investigator reported that A.R. had recounted to him that Boyd "pulled his thing out" in front of her, "hump[ed] her butt," and "did penetrate her vagina with his penis." Another investigator searched the history of the television search engine and observed searches for terms such as "porn" and "black+stepdaughter" conducted less than two hours before A.R. called 9-1-1.

**Procedural Background**

The State charged Boyd in a single indictment with three counts of aggravated sexual assault of a child younger than 14 years old and two counts of indecency with a child younger than 17 years old. *See* Tex. Penal Code Ann. §§ 21.021, 21.11. The State alleged that Boyd (1) caused A.R.'s sexual organ to contact his sexual organ; (2) caused A.R.'s anus to contact his sexual organ; (3) caused A.R.'s sexual organ to contact his mouth; (4) exposed his genitals knowing A.R. was present, with the intent to arouse or gratify his sexual desire; and (5) engaged in sexual contact with A.R. by touching her genitals, with the intent to arouse or gratify his sexual desire. *See id.* §§21.021, 21.11.

After a bench trial, the trial court found Boyd guilty on all five counts and sentenced him to prison for 40 years for each of counts one through three, 10 years

7

for count four, and 20 years for count five, with all sentences to be served concurrently. Boyd filed but later withdrew a motion for new trial; this appeal followed.

## Sufficiency of the Evidence

Boyd first argues that the evidence was insufficient to support the trial court's verdict on all indicted counts. We disagree.

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622.

### 2. Relevant Law

A person commits aggravated sexual assault if he "intentionally or knowingly . . . causes the sexual organ of a child [younger than 14 years old] to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor" or "causes the anus of a child [younger than 14 years old] to contact the mouth, anus,

or sexual organ of another person, including the actor." Tex. Penal Code. Ann. §§ 22.021(a)(1)(B)(iii),(iv), (a)(2)(B). Section 22.021 is a conduct-oriented offense under which "each separately described conduct constitutes a separate statutory offense." *Vick v. State*, 991 S.W.2d 830, 832–33 (Tex. Crim. App. 1999).

A person commits indecency with a child under 17 years old when, "with the intent to arouse or gratify [his] sexual desire," the person (1) "engages in sexual contact with the child" or (2) "exposes the person's anus or any part of the person's genitals, knowing the child is present." Tex. Penal Code Ann. §§ 21.11(a)(1), (a)(2)(A), (c). "Sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child."[3] *Id.* § 21.11(c). We can infer a defendant's specific intent to arouse or gratify his sexual desire of a person "from the defendant's conduct, his remarks[,] and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

A child victim's testimony alone can sufficiently support convictions for aggravated sexual assault and indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (providing that requirement that victim inform another person within one year does not apply to a victim who is seventeen years of age or younger at the

---

[3] *See Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977) (explaining that "genitals" includes not only the vagina but also "the vulva which immediately surrounds the vagina" and that evidence is sufficient to show the touching of genitals even when a child victim uses language different from the statutory language to describe the part of the body contacted).

time of the offense); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.).

## Discussion

Boyd contends that A.R. fabricated her allegations because she disliked him and wanted him out of the apartment. He argues that the evidence is insufficient to support his convictions on all counts—specifically that the record is devoid of evidence proving that penetration occurred[4]—and also that the State's DNA evidence raised reasonable doubt sufficient for acquittal on appeal. Viewing the entire record in the light most favorable to the verdict, we hold that the evidence was sufficient to support each element of the offenses for which Boyd was indicted.[5] *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

### 1. A.R.'s testimony of aggravated sexual assault

Boyd was indicted on three counts of aggravated sexual assault for causing contact between his penis and A.R.'s anus and vagina and between his mouth and A.R.'s vagina. A.R. testified to multiple instances of contact between Boyd's penis and her anus and vagina. First, A.R. testified that she felt Boyd's "private area" touch her

---

[4]We reject Boyd's argument regarding lack of penetration evidence because he was not indicted for penetrating A.R. but for causing *contact* with her as prohibited under sections 22.021 and 21.11. *See* Tex. Penal Code Ann. §§ 22.021, 21.11.

[5]Boyd does not dispute that A.R. was 11 years old at the time of the alleged events.

10

"googoo" and "butt" while she and Boyd lay on her bed and she was clothed.[6] Second, A.R. testified that, after her pants were removed, Boyd's "private part" touched her "booty hole" and "googoo," which was painful. Regarding count three, A.R. stated that Boyd licked the inside of her "googoo" while she lay on her back in bed without her pants on.

**2. A.R.'s testimony of indecency with a child**

Boyd was also indicted for indecency both by exposure and by contact. Tex. Penal Code Ann. §§ 21.11(a)(1), (a)(2)(A). A.R. testified that Boyd exposed his penis to her on multiple occasions. First, while sitting on the couch in the living room, Boyd moved his hand up and down on his "private area" within A.R.'s view; she noted that it appeared "black." Next, while A.R. looked at another man's Facebook profile, Boyd showed A.R. his "private part" and told her that his "stuff [was] bigger than that." Finally, A.R. saw Boyd's "boy private part" again when Boyd returned to her bedroom wearing only a white shirt.

Though A.R. testified at trial that Boyd never touched her vagina with his hand, the record contains multiple statements by A.R. to the contrary. She told the 9-1-1 dispatcher, a responding officer, and the sexual-assault nurse examiner that Boyd had, in fact, touched her vagina with his hand. We will presume that the trial court resolved

---

[6]Texas courts have repeatedly held that "contact" under section 22.021 does not require skin-to-skin contact and can occur through clothing. *IslasMartinez v. State*, 452 S.W.3d 874, 877–78 (Tex. App.—Dallas 2014, pet. ref'd).

this conflict in the evidence in favor of the verdict and defer to that resolution. *See Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

Further, a rational factfinder could have found from Boyd's conduct, his remarks, and the surrounding circumstances that he intended to arouse or gratify his sexual desire when he exposed his penis to A.R. and touched her vagina. *See McKenzie*, 617 S.W.2d at 216. The record shows that Boyd made comments about another young girl's breasts and "butt" while relating that she had been molested; told A.R. that he knew she was not wearing underwear; played pornographic videos involving a stepdad and stepdaughter in front of A.R.; masturbated in front of A.R. on at least two occasions; and asked A.R. if she wanted to "touch" and "bounce on" his penis. A.R. also noted that it hurt when Boyd attempted to put his penis in her vagina and that she saw him cleaning up "white stuff" that had come out after he masturbated next to her on her bed.

### 3. Corroborating evidence

While A.R.'s testimony alone was enough to support the verdict, *see Connell*, 233 S.W.3d at 466, other evidence tended to corroborate her testimony:

- many details of A.R.'s account remained consistent through the 9-1-1 call, reports from police, the sexual-assault nurse examiner, the forensic interviewer, and her testimony at trial;

- A.R's demeanor directly after the events was described as "hysterical," "crying really bad," and "terrified";

- a search history on the television revealed searches for "porn" and "black+stepdaughter" conducted less than two hours before A.R. called 9-1-1;

- A.R. provided ample sensory details to the forensic interviewer, who had no concerns that A.R. had been coached about what to say at the interview;

- the DNA taken from A.R.'s anal swab was "164 quadrillion times more likely" to be from A.R. and Boyd than A.R. and another unknown person; and

- the partial DNA profile obtained from the vaginal swab was consistent with that of Boyd's DNA profile, and he could not be excluded as its contributor.

Thus, having viewed all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the evidence was sufficient to establish the elements of all three aggravated sexual assault counts and both indecency with a child counts beyond a reasonable doubt. *See* Tex. Penal Code Ann. §§ 21.021, 22.11; *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Boyd's first issue.

## Disproportionate Sentencing

Boyd next complains that the evidence was insufficient to support the trial court's sentence imposing imprisonment on all counts, making the sentence "disproportionate and onerous." Boyd failed to preserve this argument.

To preserve a disproportionate-sentence complaint for appellate review, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a); *see Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding cruel-and-unusual complaint waived because defendant presented his argument for first time on appeal); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding that complaint of disproportionate sentence not preserved where defendant failed to raise the issue at the time sentence was imposed or in a motion for new trial). Here, as in *Kim*, Boyd did not raise the disproportionate-sentence issue with the trial court—neither when the sentence was imposed nor in a motion for new trial.[7] Accordingly, he has failed to preserve this issue for our review.

### Conclusion

Having overruled Boyd's first issue and having held that he failed to preserve his second issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 20, 2022

---

[7]Though Boyd did file a motion for new trial, the motion did not argue this issue, and Boyd withdrew it before a trial court ruling in any event.

14